# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gordon Terminal Service Co.,      :
               Petitioner     :
                             :
          v.                :    No. 1603 C.D. 2018
                             :    Submitted: May 6, 2019
Unemployment Compensation      :
Board of Review,                  :
              Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION BY JUDGE BROBSON**      **FILED: June 3, 2019**

Gordon Terminal Service Co. (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a Referee's decision, thereby granting unemployment compensation benefits to Dante J. Bohannon (Claimant). We now affirm.

Claimant filed for unemployment compensation benefits subsequent to his discharge from employment with Employer. The Duquesne Unemployment Compensation Service Center (Service Center) issued a notice of determination, denying benefits to Claimant based on Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. (Reproduced Record (R.R.) at 16a.) Claimant appealed the Service Center's determination, and a Referee conducted a hearing. Claimant testified on his own behalf. Employer presented the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

testimony of Robert Gordon, Employer's Vice President. At the start of the hearing, the parties agreed that Claimant started working for Employer as a pumper in February 2015, and Employer terminated his employment on June 6, 2018. (R.R. at 39a.)

Mr. Gordon testified that prior to the termination of Claimant's employment, Employer warned Claimant that utilizing his cellular device while on duty during his working hours was not permissible. (*Id.*) Mr. Gordon testified that Employer terminated Claimant's employment because Claimant was using his cell phone while at work. Mr. Gordon also testified that Claimant did not perform a job he was assigned to do because "the supervisor took his cell phone away from him." (*Id.* at 40a.) Mr. Gordon did not see Claimant using his cell phone and did not have any personal knowledge regarding Claimant's alleged failure to perform a job, and Employer did not have any witnesses at the hearing other than Mr. Gordon. (*Id.* at 39a-40a.)

Claimant testified that he is "not the only one on their phone" in Employer's plant, as "everybody in the plant is on their phone." (*Id.* at 40a.) Claimant testified that he is being singled-out. (*Id.*) Claimant testified that on the day at issue his supervisor became upset with him because Claimant was waiting on some paperwork and everyone was standing around. (*Id.* at 40a-41a.) The supervisor came over and told Claimant that "we got to work sometime" and took Claimant's phone, put it in his pocket, and proceeded to walk away. (*Id.* at 41a.) Claimant walked with the supervisor and asked the supervisor two or three times to give the cell phone back to him. (*Id.*) The supervisor returned the phone and told Claimant to clock out and go home. (*Id.*)

2

On cross-examination, Claimant acknowledged that Employer's work rules prohibit insubordination and that insubordination may result in termination. (*Id.* at 42a.) As to the job assignment, Claimant testified that his supervisor told him to "go gauge." (*Id.*) When the supervisor grabbed his phone, he told the supervisor to give it back. (*Id.*) Claimant did not say he was not going to do the assignment. (*Id.*) All Claimant said was "give me my phone." Claimant was concerned that Employer expected him to "go up on the hill with no phone or line of communication, by [him]self" because something could "have happened to [him] while [he] was up there on those tanks." (*Id.*) He did not do the job that his supervisor asked him to do because the supervisor told him to clock out. (*Id.*)

Mr. Gordon asked Claimant if he was familiar with a letter dated May 25, 2017,[2] regarding a similar earlier infraction, and Claimant responded that he had not seen the letter until Employer showed it to him on his last day of work. (*Id.* at 42a-43a.) Claimant acknowledged that he was aware of the memo posted on Employer's bulletin board since September 26, 2016, stating that use of cell phones was not permissible without special approval. (*Id.* at 43a.) When asked if "[he] and others [were] in fact watching the NBA finals on June 6th, the night of the incident," Claimant responded: "Yeah. And we watched the Superbowl and numerous other games." (*Id.*) Claimant explained that "[e]verybody in that section has their phones at all times. And they're constantly . . . on their phones." (*Id.*) Claimant stated that even the supervisor came over and sat there and watched the game. (*Id.*)

Mr. Gordon asked Claimant whether watching television on his phone while in the plant constituted a safety violation. Claimant explained that it was not

---

[2] Although Mr. Gordon did not initially identify the year in which Employer issued the warning letter, he later stated that the letter had been issued the year before. (R.R. at 46a.)

like they were walking around while looking at their phones, and, "[a]t this particular time, no one was doing nothing and they [were] using their phone[s]. Everybody had their phone[s] out." (*Id.* at 44a.) Mr. Gordon confirmed for the Referee that other people look at their phones while at work but under different circumstances. (*Id.*) Mr. Gordon explained:

> It's not just about . . . using the phone. It's about the fact that [Claimant] was watching the NBA finals, distracting other employees while doing so and refused to do the job that he was assigned to do. And that's why the supervisor took the phone away because he wasn't doing the work he was supposed to do.

(*Id.* at 44a-45a.) Claimant responded by stating that he feels like he is being singled-out, and he reiterated that he had not received the previous letter. (*Id.* at 46a.) Furthermore, he questioned how he would have been able to communicate if he did not have his phone and was to have injured himself while working outside on the tanks in the dark. (*Id.*)

Following the hearing, the Referee issued a decision, granting unemployment compensation benefits. The Referee made the following relevant findings of fact:

> 1.  The claimant worked for the employer . . . as a pumper, fulltime, from February 2015 until his last day of work, June 6, 2018. . . .
>
> 2.  The employer discharged the claimant because he allegedly refused to perform a job which he was ordered to perform, and because he was allegedly watching an NBA basketball game on his cell phone.
>
> 3.  The claimant did not refuse to do a job which he was ordered to perform.

4

4. While the claimant watched an NBA game on his cell phone, it was a common practice for employees of the employer to watch sporting events and other things on their cell phones.

(*Id.* at 48a-49a.) Based on those findings, the Referee concluded that Employer did not meet its burden to prove that Employer discharged Claimant for willful misconduct. In so doing, the Referee reasoned, in part:

> The employer's witness testified that the claimant was watching an NBA basketball game on his cell phone at work and that he refused to perform a task in which [sic] he was assigned by his supervisor. However, his testimony was based upon statements of the supervisor whom the employer chose not to bring to the hearing.
>
> The claimant testified that the supervisor took his cell phone out of his hand. The claimant repeatedly asked for his cell phone back, and then the supervisor told him to clock out and go home. As to a prior warning regarding cell phone usage, the claimant stated that he never received it until either the day he was discharged or the prior day. The warning was supposedly given in May of 2017. As for cell phone usage, the claimant stated that if they were going to fire someone for using their cell phone at work, they would have to fire everyone, including the claimant's supervisor.
>
> The Referee notes that the allegation of insubordination in refusing to perform an assigned job is based upon hearsay, what the supervisor allegedly told the vice president who appeared at the hearing . . . .
>
> The employer's witness admitted that others had used cell phones in the work place without being discharged, but stated that it was, "under different circumstances."

(*Id.* at 49a-50a.)

5

Employer appealed to the Board. The Board adopted and incorporated the Referee's findings of fact and conclusions of law and affirmed the Referee's decision. (*Id.* at 123a-24a.)

On appeal,[3] Employer argues that the Board erred as a matter of law by concluding that the Employer failed to establish willful misconduct, given Claimant's testimony that he was aware of Employer's work rules regarding insubordination and cell phone usage and violated those rules. Employer also argues that the Board erred as a matter of law in concluding that Claimant carried his burden to establish "disparate treatment" with respect to Employer's decision to terminate his employment, because Claimant's testimony in the form of bare allegations that other unnamed employees engaged in similar misconduct was not sufficient to support his burden of proof.

Section 402(e) of the Law provides, in part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his employment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." "Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981). The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts have defined "willful misconduct" as follows:

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003) (quoting *Navickas v. Unemployment Comp. Bd. of Review*, 787 A.2d 284, 288 (Pa. 2001)).

An employer seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies must prove the existence of the rule or policy and that the claimant violated it. *Walsh*, 943 A.2d at 369. Where an employer, however, admittedly tolerates violations of its rule or policy, an employer may fail to establish willful misconduct based upon a violation of that rule or policy. *Great Valley Publ'g v. Unemployment Comp. Bd. of Review*, 136 A.3d 532, 537 (Pa. Cmwlth. 2016). An employee's refusal, without good cause, to follow an employer's reasonable directive may also constitute willful misconduct. *Bailey v. Unemployment Comp. Bd. of Review*, 457 A.2d 147, 149 (Pa. Cmwlth. 1983). In the event that the court finds that a claimant's conduct constitutes willful misconduct, a claimant can still receive benefits if he can show that he had good cause for his willful misconduct.[4] *Walsh*, 943 A.2d at 369. A claimant bears the burden of proving good cause for his actions. *Id.*

---

[4] The Board cites *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011), for the proposition that a claimant may establish good cause by "demonstrating that uneven enforcement has rendered a policy unreasonable." That quote, however, does not appear in *Chapman*. Nevertheless, the Court, inexplicably, has attributed this reasoning and quote to *Chapman* several times in unreported opinions. *See Colon v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 10 C.D. 2017, filed April 2, 2018); *Lancaster Emergency Med. Servs. Ass'n v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1749 C.D. 2014, filed June 4, 2015*); Holtslander v. Unemployment Comp. Bd. of Review* (Pa.

Employer argues that the Board erred in concluding that Employer failed to prove willful misconduct, because Claimant violated Employer's policies prohibiting insubordination and using a cell phone during work hours without special approval. Employer does not dispute any of the factual findings, and, therefore, those findings of fact are binding on appeal.[5] *Campbell v. Unemployment Comp. Bd. of Review*, 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997).

As to insubordination, Employer argues that Claimant's own testimony confirms that Employer had a policy against insubordination and that Claimant's failure to obey his supervisor's directive to "gauge" the tank constituted insubordination in violation of Employer's policy. The Board, however, through its adoption and incorporation of the Referee's factual findings, found that Claimant "did not refuse to do a job which he was ordered to perform." (R.R. at 48a.) Thus, based on that finding, Employer failed to meet its burden to prove that Claimant violated Employer's work rule against insubordination.

As to whether Claimant violated Employer's policy prohibiting use of cell phones during working hours without special approval, Employer again contends that Claimant's testimony is sufficient to satisfy Employer's burden. The Board, however, found that "it was a common practice for employees of the employer to watch sporting events and other things on their cell phones," reasoning that Employer's own witness admitted that other employees used cell phones in the

Cmwlth., No. 1655 C.D. 2014, filed April 28, 2015); and *Angeleri v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 442 C.D. 2012, filed October 9, 2012). These unreported opinions, while persuasive, are not binding precedent on this Court.

[5] Although Employer does not challenge any findings on appeal, we note that Employer also offered no admissible evidence regarding the circumstances surrounding Claimant's termination, as Employer did not present any witness who had personal knowledge of what transpired between Claimant and his supervisor during the incident at issue. Thus, the findings related to the incident are necessarily based on Claimant's testimony alone.

8

work place without being discharged. (R.R. at 49a-50a.) It is apparent from the Referee's and Board's decisions that although Employer may have had a written policy prohibiting the use of cell phones without special approval, in reality the Board found that, if Employer had such a policy, Employer engaged in "inconsistent enforcement" of it. (*Id.* at 123a.) As such, Employer did not establish the existence of a rule that could support a finding of willful misconduct. *See Great Valley Publ'g.*, 136 A.3d at 537 (holding that where employer admittedly tolerated violations of its policy governing employees' internet use, employer failed to establish that claimant's use of internet amounted to willful misconduct); *Penn Photomounts, Inc. v. Unemployment Comp. Bd. of Review*, 417 A.2d 1311, 1314-15 (Pa. Cmwlth. 1980) (holding that although employer had formal policy for reporting absences and employer was aware that its employees followed less formal practice to report absences and tolerated less formal reporting practice, use of less formal practice did not constitute willful misconduct). Thus, Employer failed to meet its burden to prove that Claimant violated Employer's work rule.

Employer also argues that the Board erred in concluding that Claimant carried his burden to establish disparate treatment. "Disparate treatment is an affirmative defense by which a claimant who has engaged in willful misconduct may still receive benefits . . . ."[6] *Geisinger Health*, 964 A.2d at 974. We disagree with

---

[6] An employee seeking to prove disparate treatment must make an initial showing that: "(1) the employer discharged claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion." *Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970, 974 (Pa. Cmwlth. 2009) (en banc). Further, this Court has stated that "the mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment." *Am. Racing Equip., Inc. v. Unemployment Comp. Bd. of Review*, 601 A.2d 480, 483 (Pa. Cmwlth. 1991).

9

Employer's characterization of the Board's decision. The Board did not determine that Employer engaged in disparate treatment but rather that Employer did not meet its burden to establish willful misconduct due to its inconsistent enforcement of a work rule. The Board, in support of its decision, wrote:

> The Board is unable to substantiate any error in the Referee's willful misconduct analysis. The employer contends that the claimant's testimony is insufficient to establish disparate treatment regarding cell phone usage in the workplace. Nonetheless, the claimant's testimony was more than sufficient to establish inconsistent enforcement of an alleged work rule stating that cell phone use is not permissible without special approval.

(*Id.* at 123a.) The distinction between the two concepts—*i.e.*, disparate treatment and inconsistent enforcement of an alleged work rule—is nuanced and subtle. Disparate treatment is applicable where an employer enforces a rule in different manners, whereas inconsistent enforcement occurs where an employer enforces a rule so inconsistently that it no longer appears to be a rule that employees must follow. Furthermore, disparate treatment is an affirmative defense to willful misconduct, while inconsistent enforcement of a rule results in an employer's inability to prove willful misconduct. In situations of inconsistent enforcement, an employer cannot prove the "deliberate violation" required by *Grieb* necessary for a determination of willful misconduct. *See Grieb*, 827 A.2d at 425 (identifying "deliberate violation of an employer's rules" as a form of willful misconduct). Here, the Board concluded that Employer failed to establish a violation of Employer's rules due to Employer's inconsistent enforcement of its cell phone prohibition and, therefore, failed to prove willful misconduct. As a result, the affirmative defense of "disparate treatment" is inapplicable.

10

Accordingly, we affirm the order of the Board.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gordon Terminal Service Co.,      :
                 Petitioner      :
                                 :
          v.                   :      No. 1603 C.D. 2018
                                 :
Unemployment Compensation      :
Board of Review,      :
                 Respondent      :

# **O R D E R**

AND NOW, this 3rd day of June, 2019, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge
