IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristy L. Ickes,               :
                 Petitioner    :
                               :
        v.                     :
                               :
Unemployment Compensation      :
Board of Review,               :    No. 525 C.D. 2019
                 Respondent    :    Submitted:  March 24, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge (P.)
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON               FILED:  May 1, 2020


        Kristy L. Ickes (Claimant) petitions for review of the April 5, 2019 order of the Unemployment Compensation Board of Review (Board) affirming the decision of the referee to deny Claimant unemployment compensation benefits (benefits) under Section 402(e) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which her unemployment is due to willful misconduct connected with her work.  Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant was employed by the County of Lancaster (Employer) as a full-time family support caseworker from August 20, 2014 through October 4, 2018. Referee's Decision & Order, 2/19/19, Finding of Fact (F.F.) 1, Certified Record (C.R.) at 92.[2] Specifically, Claimant worked for a child welfare agency tasked with investigating all reports of child abuse and neglect, providing support services to families and furthering child safety. Transcript of Testimony (T.T.), 2/14/19 at 9, C.R. at 59. On September 24, 2018, Claimant notified her supervisor that she felt an assigned home visit scheduled for September 27, 2018 could be dangerous, and she requested that a co-worker accompany her. F.F. 2-3. Claimant's supervisor instructed Claimant's co-worker not to accompany her, but the co-worker disobeyed the supervisor's order and accompanied Claimant on the home visit. F.F. 4-5. The visit resulted in Claimant leaving and calling the police when the child's mother pointed a screwdriver at Claimant. F.F. 6.

Claimant requested a meeting with Employer's executive director to discuss a scheduling concern that arose due to an unanticipated housing issue that Claimant was experiencing. F.F. 7. On October 9, 2018, Claimant met with the executive director and discussed, *inter alia*,[3] her scheduling concern and her

---

[2] Our citations to the Certified Record reference the page numbers of the PDF document, as the record is not paginated.

[3] Claimant also discussed at the October 9, 2018 meeting her allegation that her supervisor was "stalking" her. F.F. 8; T.T. at 27, C.R. at 77. The executive director testified that the "stalking" allegation concerned Claimant's complaints that her supervisor was watching her calendar and asking Claimant about her whereabouts. T.T. at 27, C.R. at 77. The executive director explained to Claimant at the meeting that her supervisor was not stalking her, but was simply exercising the normal supervisory function of monitoring her work. T.T. at 28, C.R. at 77. Claimant does not mention these allegations in her brief before this Court on appeal. *See* Claimant's Brief at 12-14. At the October 9, 2018 meeting, the executive director also discussed an alleged falsification of time worked by Claimant on October 4, 2018. F.F. 8 & 17. During an October 22, 2018 meeting with Claimant and a union representative, the executive director warned

supervisor's refusal to permit a co-worker to accompany her on the September 27, 2018 home visit. F.F. 8. During the meeting, Claimant could not provide specific information about the length of her anticipated leave due to her housing problem. F.F. 9. The executive director notified Claimant that any time that Claimant took off to try to resolve her housing issue would be unexcused and unpaid. F.F. 10. Notably, the executive director informed Claimant that she would speak with Claimant's supervisor about her refusal to permit a co-worker to accompany Claimant on the home visit on September 27, 2018. *Id.* The executive director thereafter informed Claimant's supervisor that she should err on the side of caution by either allowing a co-worker to accompany Claimant on assignments or assisting Claimant in potentially unsafe situations herself. F.F. 12.

Claimant was absent from work from October 5, 2018 through November 1, 2018, the date of her termination. *See* T.T., 2/14/19 at 7, C.R. at 57. On October 10, 2018, the executive director notified Claimant that if she did not report to work on October 15, 2018 at 8:30 a.m., she could be subject to discipline, up to and including termination for job abandonment. F.F. 11. Claimant notified the executive director that she would not return until she had a meeting with union representation and was assigned to a different supervisor. F.F. 13. The executive director then provided Claimant with a final warning to report to work for a meeting with union representation scheduled for October 17, 2018 at 8:30 a.m. F.F. 15; T.T. at 11, C.R. at 61. However, Claimant did not report to work until October 22, 2018, at which point Employer held the meeting with Claimant and her union representative. F.F. 16. At the October 22, 2018 meeting, the executive director

---

Claimant about lying to her supervisor about her work time on October 4, 2018. *See* F.F. 16-17; Board's Decision & Order at 1, C.R. at 106. The alleged falsification of time information was not a basis for the discharge of Claimant. *See* F.F. 19.

informed Claimant that she would remain with her current supervisor, as the executive director had personally addressed Claimant's concerns with the supervisor and was confident that the complained-of situation would not recur. F.F. 17. Nevertheless, Claimant repeatedly refused to return to work until she was reassigned to a new supervisor. F.F. 18. On November 1, 2018, the executive director discharged Claimant for job abandonment for her refusal to return to work. F.F. 19.

Claimant applied for benefits, but the Unemployment Compensation (UC) Service Center issued a notice of determination finding her ineligible under Section 402(e) of the Law. F.F. 20; Notice of Determination at 1, C.R. at 26. Claimant appealed, and a referee held a hearing in which both Claimant and Employer participated. T.T. at 1, C.R. at 51. The referee issued a decision and order affirming the UC Service Center's denial of benefits based on the following findings. Referee's Decision & Order, 2/19/19 at 1, C.R. at 92. Claimant felt unsafe working for her supervisor and refused to return to work unless she was assigned to a different supervisor. Referee's Decision & Order, 2/19/19 at 3, C.R. at 94. However, Employer acted reasonably in addressing Claimant's concerns and the executive director gave Claimant a reasonable directive to return to work under her current supervisor. Referee's Decision & Order, 2/19/19 at 3-4, C.R. at 94-95. Claimant's refusal to return to work without allowing her supervisor a chance to correct the issue was, therefore, unreasonable. Referee's Decision & Order, 2/19/19 at 4, C.R. at 95. The referee thus concluded that Claimant's actions rose to the level of willful misconduct in connection with her work, thereby rendering her ineligible for benefits under Section 402(e) of the Law. *Id.*

In affirming the referee's decision, the Board adopted and incorporated the referee's findings and conclusions, but clarified that both parties agreed that

Employer discharged Claimant.[4]  Board's Decision & Order at 1-2, C.R. at 106-07. Further, the Board denied Claimant's remand request for the opportunity to offer additional evidence, finding that the record sufficed to enable it to render an appropriate decision.  Board's Decision & Order at 1, C.R. at 106.

Before this Court,[5] Claimant argues that the Board erred in determining that she committed willful misconduct under Section 402(e) of the Law.[6]  *See* Claimant's Brief at 12-14.  The sole argument presented by Claimant is that she had good cause to disobey Employer's order that she report to work, because it was reasonable to do so in light of her misgivings about her supervisor's judgment and her fear for her personal safety.  *Id.*  Contending that this Court has recognized that fear of physical injury may be a legitimate reason for refusing employment, Claimant asserts that she felt unsafe working for her supervisor and that she made

---

[4] The Board clarified this point because, despite finding that "the executive director discharged the Claimant for job abandonment," *see* F.F. 19, the referee subsequently stated that "both parties established that [Claimant] *resigned* because she felt unsafe working for her supervisor . . . ."  Referee's Decision & Order, 2/19/19 at 3, C.R. at 94 (emphasis added).

[5] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated.  *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.  Further, where, as here, the petitioner does not dispute the findings of fact, they are conclusive on appeal.  *Gibson v. Unemployment Comp. Bd. of Review*, 760 A.2d 492 (Pa. Cmwlth. 2000).

[6] In her petition for review, Claimant also asserted that the Board erred in failing to find Claimant's testimony credible.  However, Claimant fails to address this second argument in her appellate brief.  Thus, the issue is waived.  *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (internal citations omitted) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").  Moreover, we note that "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review."  *Miller v. Unemployment Comp. Bd. of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979).

this reason clear to Employer. *Id.* at 13-14 (citing *Sell v. Unemployment Comp. Bd. of Review*, 424 A.2d 1030, 1031 (Pa. Cmwlth. 1981)).[7] Claimant maintains that her job placed her in "a wide array of dangerous and confrontational situations," that she informed the department director that she felt she could not trust her supervisor to keep her safe, and that it is reasonable to doubt the competency of a supervisor who fails to recognize the serious nature of certain situations employees face. *Id.* at 13. Claimant, therefore, contends that both her safety concerns and her insistence on reassignment to a new supervisor were reasonable and requests that this Court reverse the Board's decision. *Id.* at 14.

The Board counters that Claimant lacked good cause to commit willful misconduct by refusing to return to work, because Employer's directive to Claimant to return to work was reasonable. Board's Brief at 10. The Board contends that Claimant's demand for a new supervisor was unreasonable, noting that Employer addressed Claimant's concerns with her supervisor and Employer has the exclusive right to make management decisions. *Id.* at 6-9.

Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Review*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with her work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

---

[7] *Sell* involves the question of whether a claimant had a necessitous and compelling cause to quit under Section 402(b) of the Law, 43 P.S. § 802(b), and is, therefore, inapposite.

(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017) (quoting *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)).  Once the employer establishes a prima facie case of willful misconduct, the burden shifts to the claimant to prove good cause for her actions.  *Downey v. Unemployment Comp. Bd. of Review*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"[A] determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach v. Unemployment Comp. Bd. of Review*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation omitted).  Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct.  *Id.* at 948.  However, "[a]n employee's refusal, without good cause, to follow an employer's reasonable directive may . . . constitute willful misconduct." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Review*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019).  Likewise, "[a]n employee's refusal to comply with work assignments may constitute willful misconduct unless the employee establishes good cause for [her] actions." *New v. Unemployment Comp. Bd. of Review*, 558 A.2d 602, 604–05 (Pa. Cmwlth. 1989).  "In determining whether an employee's refusal of an employer's work assignment constitutes willful misconduct, we must balance the reasonableness of the request with the reasonableness of the refusal." *Kelly v. Unemployment Comp.*

*Bd. of Review*, 424 A.2d 612, 613 (Pa. Cmwlth. 1981). Further, "good cause requires an employee to continue working unless and until an employer's action proves to be ineffectual where it has promised to alleviate a problem." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 337 (Pa. Cmwlth. 2006).

As the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Here, the executive director testified that she assured Claimant she "would follow up with the supervisor . . . to make sure that the supervisor, in the future, would allow any case worker who felt unsafe to be able to take a co-worker with them . . . ." T.T. at 10, C.R. at 60. As promised, Employer's executive director communicated directly with Claimant's supervisor in order to rectify the alleged safety issues. F.F. 17. In adopting the referee's determination, the Board concluded that Employer acted reasonably in addressing Claimant's concerns and requiring her to return to work, and we find no error in this determination. *See* Board's Decision & Order at 1, C.R. at 106; Referee's Decision & Order at 4, C.R. at 95.

Claimant's belief that Employer's actions failed to rectify alleged safety issues does not provide good cause for her misconduct. *See Hart v. Unemployment Comp. Bd. of Review*, 452 A.2d 72, 73 (Pa. Cmwlth. 1982) (holding that claimant's belief that relocating her work area would fail to remedy alleged harassment did not furnish good cause to disobey employer's reasonable directive). Further, Claimant failed to present evidence that Employer's actions were inadequate. *See New*, 558 A.2d at 605 (stating that "[t]he refusal to obey an order to return to work, once the changes had been made in the work site, without further evidence that these changes would not satisfy the . . . needs of [the employee], does

8

not establish good cause for the refusal to return to work"). Moreover, as Employer promised to alleviate the problem, Claimant's failure to return to work obviated any possibility of evaluating whether Employer's attempted remedy was in fact effectual. *See W. & S. Life Ins. Co.*, 913 A.2d at 337. Consequently, we agree with the Board that Claimant's refusal to return to work under the circumstances was unreasonable. *See* Board's Decision & Order at 1, C.R. at 106; Referee's Decision & Order at 4, C.R. at 95. Therefore, Claimant failed to establish good cause for her conduct.

Accordingly, we affirm the Board's decision that Claimant is ineligible for benefits under Section 402(e) of the Law.

_____
CHRISTINE FIZZANO CANNON, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristy L. Ickes,                          :
                Petitioner              :
                                  :
      v.                               :
                                  :
Unemployment Compensation                 :
Board of Review,                          :   No. 525 C.D. 2019
                Respondent            :

## O R D E R

AND NOW, this 1st day of May, 2020, the April 5, 2019 order of the Unemployment Compensation Board of Review is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge