IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lindsay Harris, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1234 C.D. 2021 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | Submitted: August 8, 2025 |
| Respondent | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                   FILED: January 21, 2026

Lindsay Harris (Claimant), *pro se*, petitions for review of the September 1, 2021 order of the Unemployment Compensation (UC) Board of Review (Board) reversing the UC Referee's (Referee) decision issued on March 8, 2021, that determined Claimant was eligible for UC benefits. The Board's order found Claimant ineligible for UC benefits under Section 402(e) of the UC Law (Law).[1] Upon review, we affirm.

## I.    Background and Procedural History

Claimant worked full time as a Patient Service Representative for Main Line Health Systems (Employer) from August 13, 2018, to July 30, 2020. (Certified

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to discharge for willful misconduct).

Record (C.R.) at 12, 31.) In this position, Claimant had access to Employer's online medical records system. On July 10, 2020, Claimant accessed the index portion of a patient's electronic medical record, which contained the patient's contact information.[2] The patient was also a co-worker of Claimant. Shortly afterward, Claimant received a notification from Employer's Compliance Department stating that a patient's chart had been accessed for non-business reasons by one of the patient's co-workers. (C.R. at 103.) When she was asked why she had accessed the patient's electronic medical record, she stated that she accessed the patient file of a co-worker's chart to find out the co-worker's address for the purpose of sending a sympathy card after learning of a death in the co-worker's family. (C.R. at 20.) On July 30, 2020, Employer terminated Claimant for violating its policy, based on the Health Insurance Portability and Accountability Act of 1996 (HIPAA),[3] against accessing a patient's electronic medical record for a non-business purpose.

On July 30, 2020, Claimant applied for UC benefits. (C.R. at 11.) In her application, she answered "yes" to the question "Were you discharged or suspended as a result of a rule violation? She also answered "yes" to the following questions: (1) Were you aware of this rule violation?; (2) Was this rule uniformly enforced?; (3) Did violation of the rule require a discharge or suspension? (C.R. at 12.) On January 21, 2021, the Department of Labor and Industry (Department) issued a Notice of Determination (Notice) informing Claimant that the Department

---

[2] In filing her UC Claim with the Department, she stated at one point that she was fired for violating Employer's rule against looking at the name and address of someone who was **not** a patient. (C.R. at 12.) However, she later admitted that she accessed the "index portion of a patient file . . . ." (Petitioner's Br. at 3.) *See also* C.R. at 103, 105, 106.

[3] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified in scattered sections of 18, 226, 29, and 42 U.S.C.).

had found Claimant ineligible for UC benefits under Section 402(e) of the Law.[4] (C.R. at 38.)

On February 1, 2021, Claimant appealed the Department's determination to a UC Referee. (C.R. at 45.) The Referee held a telephone hearing with the parties on March 4, 2021. (C.R. at 53.) At the hearing, Employer submitted a record indicating Claimant had previously been disciplined on October 26, 2018, for violating the same rule, which was a HIPAA violation. (C.R. at 78.) Employer also submitted a written statement of its policy entitled "HIPAA—Employee Access to Electronic Medical Record ("EMR")." The policy statement stated that its purpose was to provide "guidance to workforce members on the acceptable methods for accessing the . . . electronic medical record for their information and information of family members and friends." (C.R. at 82.) It further stated that while not a HIPAA violation, workforce members "may not modify, correct, print, or download any part of their medical record." *Id.* In addition it stated that **"[a]ccess to the medical information of friends, co-workers or persons of interest is also prohibited without a legitimate business purpose."** *Id.* (emphasis added.) Finally, it stated that "[t]he Main Line Health Compliance and Privacy Office monitors access to patient information and suspected violations of this policy are investigated and referred to the Human Resources Department for disciplinary action **which can include termination of employment.**" (C.R. at 82) (emphasis added).

Claimant testified at the hearing, as did Employer's Manager of Human Resources, Christina Batot, and Employer's Tax Consultant, Dennis Mullens. (C.R. at 96.) Claimant testified that she was told that she was being discharged because she went into a co-worker's chart "and due to HIPAA, was not allowed to be in that

---

[4] The Department's Notice stated that "the Claimant was discharged for violating a rule . . . . The Claimant was aware of the rule and admits to violating the rule." (C.R. at 38.)

chart and it was part of the policy not to be in there . . . ." (C.R. at 101.) She later testified that she was in the index portion of the patient's medical record, but "never accessed any information of anything medical" and that "I did not do something that I knew I was not supposed to do." (C.R. at 105.)

Ms. Batot then testified that she spoke with Claimant, who admitted that she accessed the patient medical record without a business need in order to obtain her address to send a sympathy card. Ms. Batot also testified that Claimant acknowledged that her actions violated her employer's HIPAA rules. Ms. Batot further testified that the rule Claimant had violated was consistently enforced by Employer, stating [o]ur employees require annual computer-based training to kind of review the HIPAA compliance . . . ." (C.R. at 104.) She also testified that Claimant had received a Performance Management Intervention in 2018 after she previously had accessed a patient chart without a business need, so that this was Claimant's second HIPAA violation. She further testified that she informed Claimant that her job was in jeopardy if she violated the HIPAA policy again. According to Ms. Batot, "because this [was] the second HIPAA violation, it resulted in termination." (C.R. at 104.)

In response to Claimant's testimony that she only accessed the index portion of her co-worker's electronic medical record, Ms. Batot testified that the index portion of the record contains medically-related information because it identifies if someone is in the hospital or in the building. She also stated that "the policy states that [it is a rule violation to access] systems or applications that create or maintain patient information. So, patient information would also be their demographics." (C.R. at 106.)

On March 8, 2021, the Referee issued her decision, which found Claimant eligible for UC benefits. (C.R. at 109-13.) The Referee made the following findings of fact:

4

1. Claimant was employed as a Patient Service Representative from August 13, 2018[,] until July 30, 2020; at the time of separation, she was working full-time and was earning $18.38 per hour.

2. Employer has policies that prohibit[] unauthorized access and non-business-related access or use of protected health information.

3. Claimant was or should have been aware of Employer's policies concerning access and use of protected health information.

4. On July 10, 2020, Claimant accessed the medical records of a patient so that she could send a card and gift to the patient's family.

5. On November 13, 2017, Claimant was discharged from her position for failure to adhere to Employer's policies concerning access and use of protected health information.

6. Claimant had previously been warned about her failure to adhere to Employer's policies concerning access and use of protected health information.

(C.R. at 110.)

The Referee's opinion stated in pertinent part:

At the hearing, the parties provided substantially similar testimony as to the events [] which gave rise to [] Claimant's discharge.

The Referee notes that [] Employer failed to refute, dispute or discredit Claimant's testimony that she: (a) accessed only the patient record reflecting the patient's address; (b) the patient was the father of a co-worker; and (c) she did so because she wished to send a condolence card and gift to the patient's family.

5

The Referee credits [] Claimant's testimony at the hearing and finds that [] Claimant exercised extremely poor judgment in using patient records to locate the address of her co-worker's family.

It is well established that to make a finding of willful misconduct on the part of [a] claimant, there must be evidence of a deliberate attempt on the part of [a] claimant to violate a work rule or to otherwise cause a negative impact on [E]mployer's business, or there must be evidence of negligence on the part of the individual relative to the circumstances that caused the discharge.

While the Referee in no way questions [] Employer's right to discharge an employee, based on the testimony received at the hearing and competent documentary evidence of record, the Referee cannot conclude that the Claimant's actions rose to the level of willful misconduct in connection with her work. As a result, the Claimant cannot be disqualified from the receipt of benefits under Section 402(e) of the Law.

(C.R. at 109-11.)

On March 23, 2001, Employer appealed the Referee's decision to the Board. (C.R. at 115-20.) On September 1, 2021, the Board issued its decision reversing the Referee's order and finding Claimant ineligible for UC benefits under Section 402(e) of the Law. The Board made the following findings of fact:

1. [Employer] employed [Claimant] from August 13, 2018, through July 30, 2020, finally as a patient service representative[.]

2. [Claimant] knew that [Employer's] policy prohibited accessing a patient's protected health information (PHI), including address, for non-business purposes.

6

3. On October 26, 2018, [Employer] warned [Claimant] for accessing a patient's PHI for non-business purposes[.]

4. On July 10, 2020, [Claimant] accessed a coworker's medical file to find her address to send a sympathy card.

5. On July 30, 2020, [Employer] discharged [Claimant] for accessing PHI for non-business purposes[.]

(Board's Decision, 9/1/2021; C.R. at 122.)

The Board explained its reasoning as follows:

[Employer] discharged [Claimant] for accessing [a patient's protected health information or] PHI for non[-]business purposes in violation of its policy. The Pennsylvania Courts have held that a deliberate refusal to comply with an employer's policy is willful misconduct[.] If the employer proves that the claimant knew the policy and violated it, then the burden shifts to the claimant to prove good cause for the violation or that the policy was unreasonable[.] [Claimant] admitted to knowing [Employer's] policy but testified she did not believe it applied to addresses. [Employer's] policy exists to comply with [HIPAA], but HIPAA considers a patient's address to be PHI[.] Therefore, [Claimant] had an obligation to know that her actions were prohibited. [Claimant] has not credibly justified her conduct.

**CONCLUSIONS OF LAW**

[Claimant] is ineligible for benefits under Section 402(e) of the Law.

(C.R. at 123.)

Claimant then appealed the Board's decision to this Court.

7

## II. Discussion

On appeal,[5] Claimant argues that the Board erred when it determined that the conduct for which she was terminated rose to the level of willful misconduct. She asserts that Employer failed to demonstrate that her violation of Employer's work rule prohibiting access to protected patient information applied to the index portion of a patient file, which contains only contact information, rather than patient medical information. She maintains that Employer failed to prove that under its work rule, the index portion of patient records was subject to the same access prohibitions as the rest of a patient's medical record. Therefore, she asserts that her actions did not represent a deliberate violation of Employer's work rule but instead were nothing more than an inadvertent violation of an ambiguous work rule. (Claimant's Br. at 2, 3, 5, 6.) In addition, Claimant maintains that the Board's finding of willful misconduct was not supported by substantial evidence. (Claimant's Br. at 2.)

In response, Respondent Board asserts that Employer satisfied its burden of proof that its policy prohibits employees from accessing patient information for a non-business purpose, that Claimant was aware of that policy, and that Claimant deliberately violated the policy. Furthermore, Respondent Board argues that Claimant failed to satisfy her burden of proof that she had good cause for violating the policy. Therefore, Respondent Board asserts that the Board properly concluded that Claimant was terminated from employment due to willful misconduct. (Respondent Board's Br. at 4-5.)

---

[5] "This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Rivera v. Unemployment Compensation Board of Review*, 310 A.3d 348, 352 n.4 (Pa. Cmwlth. 2024). Findings of fact made by the Board, which are not specifically challenged, are conclusive upon review. *Campbell v. Unemployment Compensation Board of Review*, 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997).

Section 402(e) of the Law provides in pertinent part:

> An employee shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his [or her] discharge or temporary suspension from work for willful misconduct connected with his [or her] work, irrespective of whether or not such work is "employment" as defined in this act . . . .

43 P.S. § 802(e). The term "willful misconduct" is not defined by statute. However, the courts have defined willful misconduct as "(1) wanton or willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009-10 (Pa. Cmwlth. 2014) (citing *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003)).

"Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Gordon Terminal Service Company v. Unemployment Compensation Board of Review*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019) (citation omitted). In UC cases, the employer bears the burden of demonstrating that the claimant's unemployment is due to willful misconduct. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). In general, in order to show that a claimant's violation of an employer's policy constitutes willful misconduct, the employer must show (1) the existence of the policy, (2) the reasonableness of the policy, and (3) that claimant was aware of the policy. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). In addition, the employer must prove that the claimant violated the policy or rule. *Walsh*, 943 A.2d at 369.

9

Once the employer has met its initial burden, the burden shifts to the claimant to prove that his or her actions did not constitute willful misconduct or that he or she had good cause for the behavior. *Kelly v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001). Finally, we note that the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

In its decision, the Board determined that "[Claimant] knew that [Employer's] policy prohibited accessing a patient's protected health information (PHI), including address, for non-business purposes." (Finding of Fact (F.F.) No. 2; C.R. at 122.) The Board also stated that "[C]laimant admitted to knowing [] [E]mployer's policy but testified that she did not believe it applied to addresses. [Employer's] policy exists to comply with [HIPA], but HIPAA considers a patient's address to be PHI. Therefore, [Claimant] had an obligation to know that her actions were prohibited." (C.R. at 123.)

Claimant has acknowledged that she was aware of the policy and knew that if she violated it again she would be subject to discharge, although she claims that she did not understand the policy to include the information she accessed. Claimant also admits that she violated the policy. Claimant stated that she exercised poor judgment but argues that:

> Employer failed to prove that "index information" [*i.e.*, the information she accessed,] was subject to the same access prohibitions and that the actions in questions [sic] were anything more than an inadvertent violation of a work rule that may have been ambiguous as to whether "index information" was to be treated in the same manner as medical records.

(Claimant's Br. at 5.)

Claimant relies upon three cases to support her argument. These cases are *Duquesne Power & Light Company v. Unemployment Compensation Board of Review*, 648 A.2d 1318 (Pa. Cmwlth. 1994), *Tongel v. Unemployment Compensation Board of Review*, 501 A.2d 716 (Pa. Cmwlth. 1985), and *Grieb*, 827 A.2d 422. According to Claimant, "[a]s with the above authorities, the record shows that [Claimant's] actions were inadvertent or at best negligent and did not represent a deliberate violation that would rise to the level of willful misconduct[.]" (Claimant's Br. at 6.)

The cases cited by Claimant are distinguishable from the present case. In *Duquesne Power & Light*, the claimant, who was employed as a billing and sales analyst for the company, instigated a service request to have Duquesne Power and Light terminate service at one location and reinstate it at another location, for a company she personally owned. There, however, the employee was assisted in making this change by her supervisor, and the Board held that "because a Duquesne Light supervisor assisted Claimant thereby condoning her conduct, Claimant was not guilty of misconduct." *Id.* at 1321. This Court affirmed the decision of the Board. The present case differs from this case, however, both because no supervisor condoned Claimant's behavior here and because the claimant in *Duquesne Power & Light*, had not been previously warned about the offending conduct.

*Tongel*, 501 A.2d 716, is similarly distinguishable. In that case, the claimant, an employee of Wells Fargo Guard Services, was initially found ineligible for workers' compensation benefits when she allowed an unauthorized male police officer into the company's security control center while she was on duty. This Court reversed the Board's decision because it found that there was "no evidence that [the claimant] knew or was on notice that police officers were to be permitted in the security control center only while they were on official business." *Id.* at 526.

Finally, unlike the present case where Claimant received a previous warning with respect to an earlier violation of the same rule before she was found ineligible for benefits, in *Grieb*, our Supreme Court determined that a claimant's "one-time, inadvertent violation" of a school's weapons policy by a part-time teacher who mistakenly brought unloaded shotguns onto school property while she was in the process of moving houses was not guilty of willful misconduct.

Here, Employer submitted into evidence a copy of its "Compliance Policy and Procedure Manual" which states that "Workforce members who have access to the MLH [Main Line Health] electronic medical record ('EMR') in order to perform their job responsibilities are reminded that access to **patient information** is permissible only when needed for a legitimate business purpose in adherence to the 'minimum necessary' HIPAA standard." (C.R. at 82.) (emphasis added). The Manual does not limit the rule to medical information, but rather uses the term "patient information."[6]

Moreover, Employer's policy manual indicates that one purpose for the policy is to comply with HIPAA. (C.R. at 82.) Claimant testified that she understood that the policy was designed to comply with HIPAA but that she did not know that being in the patient's index was a violation of HIPAA. (C.R. at 105.) However, Employer's witness testified employees received annual training on HIPAA compliance and that Claimant had received a Performance Management Intervention in 2018 for accessing a patient record without a legitimate business need, making this Claimant's second HIPAA violation. (C.R. at 104.)

---

[6] In addition, Employer's witness testified at the hearing that "patient information" would include the patient's demographic information. (C.R. at 106.)

12

We find the fact that Claimant had received a previous warning for violation of the same rule that led to her discharge to be significant in this case. As we have previously held:

> [A] conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in such cases where . . . the employee has been warned and/or reprimanded for prior similar conduct." *Department of Transportation v. Unemployment Compensation Board of Review*, [] 479 A.2d 57, 58 ([Pa. Cmwlth.] 1984) (holding that where claimant was warned about his attendance record and that his employment would be jeopardized by future violations, claimant committed willful misconduct when he subsequently overslept and missed work). Likewise, where an employee is told that his job is in jeopardy and that future violations of a work rule will result in immediate discharge, the employee commits willful misconduct where he subsequently violates the same work rule. *Blefko v. Unemployment Compensation Board of Review*, [] 400 A.2d 917, 917 ([Pa. Cmwlth.] 1979) (holding that claimant engaged in willful misconduct where the employer warned him that if he was late again he would be discharged, but shortly thereafter, the claimant was late because he overslept).

*Zimmerman v. Unemployment Compensation Board of Review,* 236 A.3d 151 (Pa. Cmwlth. 2020).

We find Employer has established the existence of the work rule, the reasonableness of the rule, and the fact of its violation. Because Claimant had previously been warned about the consequences of violating the rule, Employer has met its burden of proving that Claimant was discharged for willful misconduct. Therefore, in order to prevail, Claimant must establish that she had good cause for her actions. Good cause is shown "where the action of the employee is justified or

13

reasonable under the circumstances." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 522 (Pa. Cmwlth. 1999).

In her brief, Claimant does not address the issue of whether she had good cause to violate the rule, but it is clear that she did not have good cause to justify her actions because she could have obtained the address by other means. In her testimony before the UC Referee, she was asked why she did not use a different way to find out her coworker's address, such as looking up the address in the white pages. To this question, Claimant replied "[s]houd I probably [have] looked up [the co-worker in] the white pages and reached out to her to get [her address], absolutely." (C.R. at 106.) *See Arbster v. Unemployment Compensation Board of Review*, 690 A.2d 805 (Pa. Cmwlth. 1997) (having alternative means of addressing concerns, a claimant does not have good cause to violate the employer's rule).

We note that the issue of whether good cause exists is a factual one for the Board to resolve. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013) (citation omitted). "The Board, as ultimate fact finder, determines the weight and credibility of the evidence and is free to reject even uncontradicted testimony." *Id.* Here, the Board determined that Claimant had failed to establish good cause. It was within the exclusive province of the Board to make this finding and Claimant cannot impugn it on appeal. Therefore, because Claimant's arguments lack merit, we affirm the Board's order.

## III. Conclusion

We conclude that Employer satisfied its burden of proving that it has a reasonable policy mandating the protection of information made confidential by HIPAA, that Claimant was aware of that policy, and Claimant willfully failed to comply with the policy. We also conclude that Claimant failed to establish a valid justification for refusing to comply with Employer's policy. Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lindsay Harris,                          :
                    Petitioner           :
                                         :
        v.                               :    No. 1234 C.D. 2021
                                         :
Unemployment Compensation                :
Board of Review,                         :
                    Respondent           :

## *<u>ORDER</u>*

AND NOW, this 21st day of January, 2026, the September 1, 2021 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge