CATERPILLAR, INC., Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1994.

Decided Jan. 23, 1995.

Eric N. Athey, for petitioner.

Michael W. Babic, for intervenor, Rosette M. Showers.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Caterpillar, Inc. (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision denying benefits to Rosetta Showers (Claimant). The Board determined that Claimant established good cause for her violation of a company work rule and, thus, remained eligible for unemployment compensation benefits. We affirm.

On February 25, 1993, after 19 years on the job, Employer discharged Claimant for being absent for three days without proper notification and approval. Prior to the discharge, Claimant was absent from work during the week of February 15 through 19. However, each day, either Claimant or her husband called Employer, notifying it that Claimant was unable to work due to severe migraine and stress headaches. On February 22, 1993, when Claimant was next scheduled to work, she again reported off work due to a stress headache. That same day, Claimant and her husband visited Employer's company physician, Dr. Michael Zittle. Claimant told Dr. Zittle that she had seen a psychiatrist, Dr. Mazgaj, who had diagnosed acute depression and suicidal tendencies and had wanted to hospitalize her. Although Claimant had chosen not to go into the hospital, she believed that she was unable to work and asked Dr. Zittle for a leave of absence. Dr. Zittle told Claimant that her psychiatrist would have to approve a medical leave of absence. When Claimant explained that she did not know if her psychiatrist would fill out a medical leave form because he was mad at her for not going into the hospital and because she was a new patient of his, Dr. Zittle told her that she could have a leave without pay. Claimant did not come into work on February 23, 24 or 25; however, believing that she was on an unpaid leave of absence, Claimant did not call Employer to notify it that she would be absent. After her third unreported absence, Employer discharged Claimant. Claimant applied for unemployment compensation benefits which were denied by the job center on the basis that Employer had discharged Claimant for willful misconduct because she failed to follow company guidelines for absences. Claimant appealed to the referee.

On June 23, 1993, a hearing was held before the referee without the presence of Claimant's attorney, whose request for a continuance had been denied by the referee. Following this hearing, at which Claimant did not testify, the referee issued a decision

denying benefits. Claimant appealed, and the Board remanded to the referee to obtain Claimant's testimony in her attorney's presence and to allow Claimant's attorney to cross-examine Employer's witnesses with regard to their testimony at the first hearing. At the remand hearing, Employer presented its witnesses for cross-examination and also presented the direct testimony of Larry Staker, its Labor Relations Manager, who made the decision to fire Claimant. Staker had not testified at the first hearing. (R.R. at 82a.) Claimant's attorney objected to the testimony of this witness as outside the scope of the remand. After cross-examination of Employer's witnesses, Claimant testified and also presented the testimony of her husband and her union shop steward. Employer's attorney cross-examined these witnesses. Following receipt of this testimony, the Board considered Claimant's appeal. The Board, which did not consider Staker's testimony in arriving at its decision, reversed the referee and granted benefits to Claimant.

Employer appeals to this court,[1] arguing that the Board erred by (1) reversing the referee's determination that Claimant's violation of Employer's rule constituted willful misconduct, rendering Claimant ineligible for unemployment compensation benefits,[2] and (2) refusing to consider the "rebuttal" testimony of Larry Staker.

## I.

Section 402(e) of the Unemployment Compensation Law, (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e), provides that an employee shall be ineligible for compensation for any week:

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .

 Violation of work rules may constitute willful misconduct.[3] *Partsch v. Unemployment Compensation Board of Review,* 64 Pa.Commonwealth Ct. 293, 439 A.2d 1331 (1982). An employer alleging that an employee committed willful misconduct by violating a work rule must prove both the existence of the rule and the fact of its violation, and an employee seeking to justify her actions must prove good cause. *Id.*

 Here, Employer contends that Claimant violated Employer's work policy in two respects: by being absent, with notification but without approval, from February 15 through February 19 and by being absent, without either notification or approval, on February 23, 24 and 25. However, Employer's separation information indicates that Claimant was terminated because of her absences from work without notification on February 23, 24 and 25. (R.R. at 6a.) Both the referee and the Board determined that Employer met its burden of proving willful misconduct. However, the Board also determined that Claimant had met her burden of proving good cause for her absence without calling each day to report off work because she believed that she was on an unpaid leave of absence.[4] We agree.

1. Our scope of review is limited to determining whether the Board committed an error or law, whether constitutional rights have been violated or whether necessary findings of fact are supported by substantial evidence. *McKeesport Hospital v. Unemployment Compensation Board of Review,* 155 Pa.Commonwealth Ct. 267, 625 A.2d 112 (1993).

2. We note that the Board did not reverse the referee's finding of willful misconduct but, rather, determined that Employer met its burden of proving willful misconduct but that nonetheless Claimant was entitled to benefits because she established good cause for her violation of Employer's work rule.

3. Although "willful misconduct" is not defined in the statute, it has been defined in case law as (1) an employee's deliberate violation of an employer's rules, (2) disregard of the standards of behavior which an employer has the right to expect of an employee, (3) negligence which manifests culpability, evil design, wrongful intent or intentional or substantial disregard of the employer's interests or of the employee's duties and obligations, or (4) the wanton and willful disregard of the employer's interest. *Partsch. Allen v. Unemployment Compensation Board of Review,* 162 Pa.Commonwealth Ct. 250, 638 A.2d 448 (1994).

4. Employer asserts that the Board's finding that Claimant did not report off work because she believed that she was on an unpaid leave of absence is inconsistent with the totality of the competent evidence presented because Claim-

The Board's findings and conclusions are supported by the following testimony of Claimant as to why she did not call Employer between her February 22, 1993 visit to Dr. Zittle and her termination on February 25, 1993:

> I went in to see Dr. Zittle on February 22nd, my husband and I. I knew that I was in no condition to work yet. I knew that I had to have time to get this medication, to see how I was going to react besides what the other medication I was taking. So I talked to Dr. Zittle about this. I also explained to Dr. Zittle that Dr. Masguy [sic] was a new psychiatrist to me. I also explained to him that he wanted to put me in the hospital, and I did not want to go to the hospital. I asked Dr. Zittle for time off. He told me that I could have time off, without pay, but he also insisted that I take the paper back to Dr. Masguy [sic], to get Dr. Masguy [sic] to fill it out. And I said I didn't now [sic] whether Dr. Masguy [sic] would fill it out, because he was very angry because I wouldn't go to the hospital. And I said I need time off. So when I left Dr. Zittle's office, he okayed me that I could have time off, but it would be without pay. So that is why I did not call in no more.

ant's testimony is not worthy of credence. We disagree. Employer cites its own witnesses' testimony for the proposition that Claimant's belief that she was on an unpaid leave of absence is not credible. However, the Board, which is the ultimate fact finder, determining the credibility of witnesses and the weight to be assigned to the evidence, found Claimant credible and resolved conflicts in testimony in favor of Claimant. *Allen v. Unemployment Compensation Board of Review,* 162 Pa.Commonwealth Ct. 250, 638 A.2d 448 (1994). We must affirm the Board's findings if they are supported by substantial evidence, which is such relevant evidence as a reasonable person would find adequate to support a conclusion. *Hercules, Inc. v. Unemployment Compensation Board of Review,* 146 Pa.Commonwealth Ct. 77, 604 A.2d 1159 (1992). Here, Claimant's testimony, which the Board credited, supports the Board's findings.

5. The following colloquy occurred at the second hearing:
> R. We have just been joined at the table by Larry Staker, and you are still under oath. Cross examination.

(R.R. at 94a.) Because Claimant demonstrated good cause for the rule violation, the Board properly granted benefits.

## II.

■ Employer also contends that the Board erred in not considering the "rebuttal" testimony of Larry Staker, thus violating Employer's due process right to a full and fair hearing. We disagree.

Contrary to Employer's position on appeal that it presented Staker as a rebuttal witness, the record clearly shows that Staker gave direct, not rebuttal, testimony. First, Employer's own lawyer specifically stated that Staker was testifying on direct examination.[5] Second, Staker testified before Claimant or any of her witnesses had testified and he was not recalled to rebut any of that testimony.

Employer had a full and fair opportunity to be heard at the first hearing and to cross examine Claimant's witnesses at the second hearing; therefore, we see no violation of due process. Furthermore, because the second hearing was specifically called to allow Claimant to testify with her counsel present and to allow her counsel to cross examine Employer's witnesses, Staker's direct testimony was beyond the scope of the remand.

> EL. Actually, Mr. Shaker [sic] didn't testify at the first hearing, so we would offer it as direct.
> R. So at this time there will be direct testimony from him?
> EL. Correct.
> ....
> CL. Referee, before we hear the substantive part of Mr. Staker's testimony, can I have an offer of proof from counsel, as to the nature of this testimony, since the memorandum from the Board, at least as I read it, does not contemplate additional witnesses from the company.
> R. The offer of proof is reasonable.
> EL. The offer of proof is Mr. Staker was the individual who made the decision to terminate Rose Showers. And in fact as being that individual, he is going to testify the reasoning behind the decision. In terms of whether he should be permitted to testify today. This is the first time that we have been able to hear their cross examination, and we do have a right to present additional testimony as we would have, had the hearing been held in full on the original date.
> (R.R. at 82a.)

Thus, the Board did not err in refusing to consider Staker's testimony.

Accordingly, the Board did not err in granting benefits, and we affirm.

## ORDER

AND NOW, this 23rd day of January, 1995, the order of the Unemployment Compensation Board of Review, dated April 7, 1994, is hereby affirmed.