# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victorine Leao,                          :
                 Petitioner      :
                                    :
             v.             :    No. 703 C.D. 2021
                                    :    Submitted:  December 17, 2021
Unemployment Compensation                :
Board of Review,                         :
                 Respondent      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED:  June 14, 2022**


Victorine Leao (Claimant), pro se, petitions for review of the May 28, 2021 Order of the Unemployment Compensation (UC) Board of Review (Board), affirming and adopting, as modified, the decision of a Referee that found Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law[2] (Law).  On appeal, Claimant argues that, although Trans Union LLC (Employer) technically discharged her for violating its email confidentiality policy (Policy), the real reason for her termination was retaliation against her for filing a harassment complaint

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).  Section 402(e) provides that "[a]n employe shall be ineligible for compensation for any week" "[i]n which [their] unemployment is due to [their] discharge . . . from work for willful misconduct connected with [their] work . . . ." *Id.*

and/or due to a COVID-19 workforce reduction. Claimant further argues that, even if she was discharged for violating the Policy, she is not disqualified from receiving UC benefits because Employer did not uniformly enforce its Policy and she had good cause for her actions. Although the Board's findings regarding the reason for Claimant's discharge are supported by substantial evidence, the Board did not make findings of fact or resolve conflicting testimony concerning whether Employer consistently enforced the Policy, which goes to whether Employer met its burden of proving the deliberate violation of a work rule. *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019). Therefore, we vacate the Board's Order and remand the matter for the Board to issue a new determination that addresses the conflicting evidence regarding the enforcement of Employer's Policy and whether Claimant's actions constituted disqualifying willful misconduct under Section 402(e) of the Law.

## I. BACKGROUND

Claimant worked for Employer as a full-time Senior Technician from September 28, 2015 to June 12, 2020, when, following an investigation, she was discharged for violating the Policy, which prohibits employees from sending business-related emails containing confidential information to their personal email accounts. On May 29, 2020, Claimant, who was aware of the Policy and was alleged to have previously violated the Policy, emailed herself business-related emails containing confidential information. Claimant applied for UC benefits, but a UC Service Center found her ineligible for benefits under Section 402(e) in a Notice of Determination. The UC Service Center concluded that Claimant was ineligible because she "was warned about violating the [Policy]" by forwarding emails containing confidential information to her personal email account, and "failed to

2

show that she had good cause for her actions." (Certified Record (C.R.) Item No. 6, Notice of Determination at 1.) Claimant appealed, and a Referee held a telephonic hearing on March 9, 2021, at which Claimant appeared and was represented by counsel, and Employer appeared, represented by a tax consultant, and presented three witnesses.

### A. *Proceedings Before the Referee*

#### 1. Employer's Evidence

Employer offered three witnesses: Lead Human Resource Business Partner Amy Addis (HR Partner), Associate Lead Miguel Duenas (Supervisor), and Department Manager Ian Kenny (Department Manager). HR Partner testified that, following an internal investigation, Claimant was discharged on June 12, 2020, for violating Employer's Policy on May 29, 2020, by forwarding emails that contained confidential information to her personal email account. HR Partner explained that the Policy, which is available to employees on Employer's intranet and is a part of each employee's annual training, precludes the forwarding of confidential information to an employee's personal email address. (C.R. Item No. 18, Transcript (Tr.) of Testimony at 17.) According to HR Partner, when Claimant was told of the allegations, Claimant knew what emails the investigation was about and acknowledged forwarding the emails to her personal email. Although Claimant indicated to HR Partner that Claimant wanted to use her home computer, HR Partner stated that Claimant was not authorized to work from home. HR Partner described a prior incident in the summer of 2019 (2019 Incident), when Claimant had violated the Policy and that Claimant had been told such actions violated the Policy, which Claimant acknowledged. (*Id.* at 10-11.) HR Partner explained, in regard to an unrelated, May 27, 2020 warning that Employer gave to Claimant, which Claimant

asserted was the reason for her forwarding the emails so as to prepare her defense, that this was not a reason to violate the Policy and that, if Claimant needed more time to respond to the warning, it would have been given.

Supervisor described being advised of Claimant's violation of the Policy by Employer's information security personnel, who inquired if Claimant had been authorized to send the emails that contained confidential information. Supervisor testified that Claimant was not so authorized, he confirmed that confidential information was contained therein – the name, date, and social security numbers of five or six consumers – and he advised Claimant of the investigation. According to Supervisor, Claimant was not authorized to work from home, and Claimant did not deny having sent the emails, which were a total of 5 to 10 pages.

Department Manager testified that the Policy is for security purposes and provides "that no personal information should be forwarded to [an employee's] personal e[]mail or shared with anyone." (*Id*. at 15.) Department Manager stated that the Policy is uniformly enforced and the typical discipline for its violation is termination. (*Id.* at 15-16.) Although he was not involved in the 2019 Incident, when asked why Claimant was not discharged then, Department Manager believed it was a situation that Claimant was possibly given another opportunity or chance. (*Id*. at 16.)

2. Claimant's Evidence

Claimant testified to the following. Claimant received a warning on May 27, 2020, which she felt was issued in retaliation for a complaint she lodged with Human Resources. (*Id.* at 17.) Claimant testified that in order to defend against this warning, she sent herself an email approximately 10 pages long containing a string of emails, in which there was confidential information from 5 consumers. (*Id*. at 17,

4

21.) Claimant explained that on May 29, 2020, at around 8:00 p.m., she forwarded the emails to her personal email so that she "could work on it over the weekend" because she was running out of time to do so at the office. (*Id*. at 18-19, 21.) Claimant also wanted to work from home, which she claimed Supervisor allowed her to do, because her home computer set up was more comfortable than her work-issued laptop.

Claimant acknowledged being aware of Employer's Policy and that she had a higher level of responsibility to ensure that she was not sending confidential information when sending a work email to her personal email. Notwithstanding this responsibility, Claimant agreed that she had not reviewed the emails in question because she did not have time to do so. Claimant explained that "through [her] five years working at [Employer], [she had] sent numerous e[]mails to [her]self and back and forth [and] that was okay, that was approved by management." (*Id*. at 19.) According to Claimant, each time a file is sent outside the company, information technology (IT) flags it, sends an email to the employee asking who sent the email, why it was sent, and whether it was approved by a supervisor. Claimant explained that "all the previous times, it was approved by my supervisor except this one." (*Id*. at 20.) Concerning the 2019 Incident, Claimant testified that she was never actually counseled for a violation of the Policy, the email at issue at that time contained confidential information, and she had not received a warning or counseling because "it was approved." (*Id*. at 21.)

### 3. Referee's Decision

Following the hearing, the Referee issued a decision finding Claimant ineligible for benefits pursuant to Section 402(e) of the Law. In doing so, the Referee made the following findings of fact:

5

1. The [C]laimant worked for [Employer] from September 2015 until June 12, 2020[,] as a full-time senior technician.

2. The [E]mployer has a [P]olicy which states in part that workers are not permitted to send business-related emails containing confidential or personally protected information to their personal email account.

3. Violation of the [P]olicy may result in termination for the first offense.

4. The [E]mployer informed the [C]laimant of the [P]olicy.

5. The final incident leading to the separation occurred on May 29, 2020.

6. After becoming aware of the incident, the [E]mployer conducted a disciplinary review of the incident.

7. On May 27, 2020, the [E]mployer had administered a discipline to the [C]laimant for an incident unrelated to the final incident.

8. The [C]laimant believed it was important to defend herself as a result of this discipline, [and] therefore emailed [5] to [10] pages of business-related information to her personal email that were related to the discipline that could be used by the [C]laimant to review while at home.

9. The email contained confidential information for five [E]mployer consumers, including names[,] addresses[,] and Social Security numbers.

10. The [C]laimant did not review the email to confirm that personally protected information was not contained in the email prior to sending it to her personal email, as she did not have time.

11. At the conclusion of the investigation, the [E]mployer discharged the [C]laimant due to violation of the [E]mployer [P]olicy.

(C.R. Item No. 19, Referee's Decision, Finding of Fact (FOF) ¶¶ 1-11.)

The Referee concluded that because Claimant acknowledged being aware of the Policy and it was "not in dispute that . . . [C]laimant . . . violate[d] the [P]olicy during the final incident, . . . the [E]mployer has met [its] burden of proof under Section 402(e) of the Law as" Claimant deliberately violated the Policy. (*Id*. at 3.) The Referee noted that "[o]nce the employer has proven both the existence of its policy and the fact of its violation, the burden shifts to the claimant to establish either good cause for violating the employer's policy and/or that the policy is unreasonable, or that the policy is not fairly enforced or uniformly applied." (*Id*. at 2-3.) The Referee concluded that "[C]laimant testified that she did not confirm that the information that she was emailing to her personal email did not contain confidential information because she was rushed and did not have time to review." (*Id*. at 3.) The Referee found that Claimant did not have good cause for her failure to review the email for confidential information and to avoid violation of the Policy, and, thus, found Claimant ineligible for benefits under Section 402(e). (*Id*.) Claimant subsequently appealed to the Board.

### B. The Board's Order

Claimant argued to the Board that, although she was aware of the Policy, the inclusion of confidential information was inadvertent. She further asserted that "[t]here [wa]s a question in this case as to [Employer's] consistent application of the rules" because during Claimant's five years of employment, she had sent numerous emails to her personal email address without warnings or discipline from Employer, and she was not fired for the previous 2019 Incident. (C.R. Item No. 25, Claimant's Letter Brief at 2.) After reviewing the entire record, the Board concluded the Referee's Decision was in accordance with the Law and affirmed. The Board adopted and incorporated the Referee's findings and conclusions,

but modifie[d] Finding of Fact 5 to reflect that the final incident leading to the [C]laimant's separation from work occurred on May 29, 2020, wherein the [C]laimant sent an email from her work account to her personal email account containing protected consumer information in violation of the [E]mployer's [P]olicy; modifie[d] Finding of Fact 8 to reflect that the [C]laimant sent the email dated May 29, 2020[,] [to] her personal email account because it contained information related to her May 27, 2020 discipline and she wanted additional time to review the information at home; and modifie[d] Finding of Fact 11 to reflect that on June 12, 2020, the [E]mployer discharged the [C]laimant for sending protected business and consumer information from her business email to her personal email account in violation of its company [P]olicy.

(C.R. Item No. 26, Board's Order.)  Claimant filed a petition for review.

## II. DISCUSSION

On appeal,[3] Claimant argues that Employer's Policy was used as a pretext to fire her, and she was really discharged in retaliation for filing the harassment claim and/or due to a COVID-19 workforce reduction.  Claimant further asserts that Employer's Policy was not uniformly enforced, and she had good cause for her actions.  The Board responds that competent testimony and evidence supports its

---

[3] This Court's review in a UC "case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or" essential findings of fact were not supported by substantial evidence. *Lee Hosp. v. Unemployment Comp. Bd. of Rev.*, 637 A.2d 695, 697 (Pa. Cmwlth. 1994).  In reviewing Board decisions, "[t]he Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006).  Substantial evidence is defined as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986).  The Board is the ultimate factfinder and is empowered to make its own determinations as to evidentiary weight and the resolution of conflicting evidence. *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 843 (Pa. Cmwlth. 2017).  "[T]his Court is bound 'to examine the [evidence] in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn'" therefrom. *U.S. Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977)).

finding that Claimant was discharged for violating the known Policy, about which she had been previously warned, and there was no evidence that Claimant was fired as retaliation for filing a harassment claim or due to COVID-19. The Board contends that, contrary to Claimant's arguments, she did not offer evidence that Employer did not uniformly enforce its Policy, and/or she did not have good cause for her actions.

Section 402(e) of the Law provides, in pertinent part, "[a]n employe shall be ineligible for compensation for any week in which [their] unemployment is due to [their] discharge or temporary suspension from work for willful misconduct connected with [their] work . . . ." 43 P.S. § 802(e). The question of whether a claimant's "actions constitute willful misconduct is a question of law, subject to [judicial] review." *McLean v. Unemployment Comp. Bd. of Rev.*, 383 A.2d 533, 535 (Pa. 1978). The employer has the burden of proving willful misconduct. *Id.* If an employer meets its burden of proof, "the burden of proof shifts to the [claimant] to prove that she had good cause for her actions." *Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." *Docherty v. Unemployment Comp. Bd. of Rev.*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006).

Here, the Board found that Claimant was discharged for deliberately violating Employer's Policy on May 29, 2020, when she emailed herself confidential information in violation of the Policy. The violation of an employer's policies or work rules may constitute willful misconduct. *Caterpillar, Inc. v. Unemployment Comp. Bd. of Rev.*, 654 A.2d 199, 201 (Pa. Cmwlth. 1995). "When an employee is discharged for violating a work rule, the employer must prove the existence of the work rule, the reasonableness of the rule, the claimant's awareness of the rule, and the fact of its violation." *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76,

9

79 (Pa. Cmwlth. 2012). The employee's violation of a rule must be knowing and deliberate, and an inadvertent or unknowing rule violation is not willful misconduct. *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943 (Pa. Cmwlth. 2004).

The parties do not dispute the existence of the Policy, the reasonableness of the Policy, Claimant's awareness of the Policy, or the fact that Claimant forwarded emails that contained confidential information in violation of the Policy on May 29, 2020. Rather, Claimant asserts that her violation of the Policy was not the **real** reason for her discharge, that her violation was not deliberate, and that Employer did not uniformly enforce its Policy. Upon review, we conclude that, while the record supports the Board's findings that Claimant's discharge was due to her violation of the Policy, we are unable to determine the validity of Claimant's second and third assertions due to the lack of specific findings of fact and credibility determinations related to Employer's enforcement of the Policy.

On the first assertion, the reason for Claimant's discharge, both HR Partner and Department Manager testified that Claimant was discharged for violating the Policy, (Tr. of Testimony at 8, 15), and Claimant testified that her termination letter specifically mentioned "the [] 2019 violation of [a] **similar** nature with sending an e[]mail to [her] personal e[]mail," (*id*. at 26 (emphasis added)). Further, Claimant's own filings with the UC authorities stated that she left due to a rule violation, that she had violated the Policy, and that violation of the Policy resulted in her discharge. (C.R. Item No. 2, Initial Application at 6-7.) Absent from the record is any evidence that supports her current contention that she was discharged for any reason other than violation of the Policy.[4] The above evidence supports the finding that Claimant

---

[4] While Claimant testified that she thought the May 27, 2020 warning was issued in response to a complaint to HR, (Tr. of Testimony at 17), she did not offer similar testimony regarding her discharge for the Policy violation.

was discharged for violating the Policy and, thus, this finding is conclusive on appeal. *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006).

Claimant's second and third assertions are intertwined, and their resolution affects whether the Board erred in finding that Employer met its burden of proving willful misconduct based on the deliberate violation of the Policy. In *Gordon Terminal Service Co.*, this Court held that a claimant may challenge whether an employer meets its burden of proof in a rule violation case by establishing that the rule is not consistently enforced, and, if it is not, the rule violation does not support a finding of disqualifying willful misconduct. 211 A.3d at 899. "[I]nconsistent enforcement occurs where an employer enforces a rule so inconsistently that it **no longer appears to be a rule** that employees must follow." *Id*. at 900 (emphasis added). *See also Great Valley Publ'g v. Unemployment Comp. Bd. of Rev.*, 136 A.3d 532, 538-39 (Pa. Cmwlth. 2016) (holding that where an employer admittedly tolerated violations of its policy governing employees' internet use, the employer failed to establish that the claimant's use of internet amounted to willful misconduct). The "inconsistent enforcement of a rule results in an **employer's inability to prove willful misconduct**."[5] *Gordon Terminal Serv. Co.*, 211 A.3d at 900 (emphasis added). In both *Gordon Terminal Service Co.* and *Great Valley Publishing*, this Court held that the employers could not meet their burdens of proving a deliberate rule violation so as to support a finding of willful misconduct where the employers did not consistently enforce their rules. *See also Fegley Mgmt. & Energy v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 11 C.D. 2020,

---

[5] This distinguishes a claim of "inconsistent enforcement" from "disparate treatment," which is an affirmative defense and occurs when an employer enforces a rule differently for different employees. *Gordon Terminal Serv. Co.*, 211 A.3d at 899.

11

filed Oct. 14, 2020), slip op. at 10 (holding that "[b]ecause [the e]mployer did not show that it consistently enforced its own . . . policy, it was as if there was no rule at all").[6]

Claimant contends, as she did to the Board, that Employer does not consistently enforce the Policy and she presented evidence of this inconsistent enforcement. The Board responds that Claimant's testimony that she sent emails to herself with impunity in the past is insufficient to establish inconsistent enforcement because none of those prior emails contained confidential information. The Board likens this matter to that in *Khouri v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1352 C.D. 2015, filed April 8, 2016), where, it asserts, "this Court also found willful misconduct when the claimant forwarded the employer's proprietary and confidential information outside the employer's system to her personal e[]mail account, in violation of the employer's policy." (Board's Brief at 14.)

Reviewing the record, Claimant's testimony regarding her prior experience with the Policy conflicts with that of HR Partner and Department Manager concerning whether Employer uniformly enforced its Policy prior to the May 29, 2020 violation and Claimant's discharge therefor. Claimant testified that in over five years of working for Employer, she had sent numerous emails to herself, **including** ones that **contained confidential information**, that were flagged by IT and reviewed by her supervisor, and that "**all the previous times, it was approved** by my supervisor **except this one**." (Tr. of Testimony at 19-21 (emphasis added).) Claimant further testified that she was not actually "counseled" for her alleged

---

[6] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

violation of the Policy in 2019. (*Id.* at 20.) In contrast, HR Partner testified that Claimant was warned in 2019 about Claimant's violation of the Policy, and Department Manager testified that the Policy was uniformly enforced and its violation resulted in termination. (*Id.* at 10-11, 15-16.) However, Department Manager acknowledged that he had not been involved in the 2019 Incident and that, apparently, Claimant received a second chance, rather than being discharged. (*Id.* at 15-16.) Thus, there is conflicting testimony regarding uniform enforcement of the Policy.

Unfortunately, while the Referee acknowledged that Claimant could "establish . . . that the policy **is not fairly enforced or uniformly applied**," the Referee rendered **no** findings or credibility determinations regarding the evidence on whether the Policy was uniformly enforced or otherwise addressed the issue beyond this statement. (C.R. Item No. 19, Referee's Decision at 3 (emphasis added).) Further, notwithstanding Claimant's argument to the Board regarding the inconsistent enforcement of the Policy, the Board likewise made **no** credibility determinations or findings regarding this conflicting testimony and did not address the issue. Because the Board did not resolve the conflicting evidence and address the issue of Employer's uniform enforcement of the Policy, we cannot exercise effective appellate review over the Board's Order to determine whether it erred in finding that Employer had met its burden of proving a deliberate violation of the Policy.

Although the Board relies on *Khouri* to support its position that Claimant's violation of the Policy is disqualifying willful misconduct, *Khouri* is distinguishable. Like here, *Khouri* involved a claimant's violation of an employer's known policy against emailing proprietary information to a personal email address. *Khouri*, slip

13

op. at 3, 10.  Unlike here, however, the Board in *Khouri* made specific credibility determinations that rejected, as not credible, the claimant's testimony that her actions were accidental, she regularly sent work-related emails to herself, the employer routinely monitored all network communications, and she never had a prior issue.  *Id*., slip op. at 3-4, 11-12.  These credibility determinations allowed this Court to engage in meaningful appellate review concerning the claimant's argument that the employer's policy had not been uniformly enforced.  Unfortunately, we do not have the benefit of such factual findings and credibility determinations to aid us in this matter.

## III.   CONCLUSION

Accordingly, while the Board's finding that Claimant was discharged for violating the Policy is supported by substantial evidence, we cannot determine whether the Board erred in finding that Employer met its burden of proving disqualifying willful misconduct in light of the unresolved conflict of evidence that the Policy had not been uniformly enforced.  Thus, we are constrained to vacate the Board's Order and remand the matter for the Board to issue a new decision that addresses the conflicting evidence regarding the enforcement of Employer's Policy and, based on those findings and the application of the appropriate legal standard, determine whether Claimant's actions constituted disqualifying willful misconduct under Section 402(e) of the Law.[7]

_____
**RENÉE COHN JUBELIRER,** Judge

_____

[7] Based on our disposition, we do not address Claimant's other allegations of error.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victorine Leao,                :
            Petitioner      :
                          :
          v.              :    No. 703 C.D. 2021
                          :
Unemployment Compensation  :
Board of Review,          :
           Respondent   :

# O R D E R

**NOW**, June 14, 2022, the Order of the Unemployment Compensation Board of Review (Board), entered in the above-captioned matter is hereby **VACATED**, and this matter is **REMANDED** for the Board to issue a new decision in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge