# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FBO Services, Inc.,                          :
                              Petitioner     :
                                             :
              v.                             :     No. 1306 C.D. 2021
                                             :     Submitted: August 26, 2022
Unemployment Compensation                    :
Board of Review,                             :
                              Respondent     :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE LORI A. DUMAS, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: April 18, 2023


FBO Services, Inc. (Employer) petitions for review of an October 25, 2021 Order of the Unemployment Compensation (UC) Board of Review (Board), affirming the decision of a Referee that found Eileen DeHaas (Claimant) not ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] The Board determined Employer did not meet its burden of demonstrating Claimant engaged in willful misconduct when she accepted two

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [the employe's] unemployment is due to [the employe's] discharge or temporary suspension from work for willful misconduct connected with [the employe's] work . . . ." *Id.*

checks, totaling $2,400, from a client because Employer did not consistently enforce its conflict of interest policy. Upon review, we affirm.

## I. BACKGROUND

Claimant worked as a full-time account manager for Employer from 2003 until she was terminated on September 16, 2020. (Board's Decision, Finding of Fact (FOF) ¶ 1.) After her termination, Claimant applied for UC benefits. A UC Service Center initially determined Claimant was eligible for benefits. (Notice of Determination, Reproduced Record (R.R.) at 16a.) Employer filed a timely appeal, and a telephone hearing was scheduled before a Referee.

At the hearing, Joseph Roskos, President of Employer (President), and Evan Roskos, Director of Employer (Director), testified on Employer's behalf. President testified as follows. Employer handles clients' personal financial affairs, and as an account manager, Claimant would have access to clients' checkbooks and other financial information. (*Id.* at 86a.) President considered an account manager to be a fiduciary position and "a position of [a] high degree of trust and confidence." (*Id.*) Claimant was terminated for violating a company policy against conflicts of interest, specifically accepting two checks from a client, who was described as "elderly and in a decline" with "cognitive issues." (*Id.* at 87a-88a, 95a.) Employer discovered the checks through a review of its computer system on September 15, 2020. (*Id.* at 88a.) Employer implemented the policy in 2016, (*id.*), and a copy of its policy, as well as Claimant's acknowledgement of the handbook, were admitted into evidence, (*id.* at 19a-22a). On cross-examination, President initially testified any kind of gift was prohibited, but then testified that "*de minimis*" gifts, such as candy, "not financial," were permitted. (*Id.* at 91a.) President described a "*de minimis*" gift as

one around $25 in value. (*Id.* at 92a.) President acknowledged there was no written policy indicating "*de minimis*" gifts were permitted. (*Id.*) When asked by the Referee how Claimant was to know what would be considered "*de minimis*," President replied, "I think she would know the difference between a *de minimis* gift, especially a tangible gift like, again, flowers or candy or whatever[,] versus a personal check." (*Id.* at 93a.) When confronted about the checks, Claimant told Employer it was a donation for her son, who suffers from a kidney condition. (*Id.*) President agreed there was no evidence the client disapproved of the check, and President does not claim that the funds were solicited. (*Id.* at 95a, 99a.) President also testified that an employee could seek approval to accept a gift. (*Id.* at 95a-96a.)

Director briefly testified that he discovered the checks while "monitoring," and after confronting Claimant about them, Claimant told him they were for her son. (*Id.* at 101a-02a.)

Claimant testified on her own behalf as follows. She was unaware of the policy and offered to give the money back. (*Id.* at 102a.) When the handbook was distributed, she was told "it was a boiler[]plate handbook" and "[i]t wasn't anything different than the handbook that we had before." (*Id.* at 103a.) Claimant testified other employees accepted gifts, including President who accepted an $8,000 cash gift in 2014. (*Id.* at 105a-06a.) After the policy went into effect, gifts were still accepted with President's knowledge, as Claimant often showed him the gifts, but Claimant was not disciplined. (*Id.* at 106a-08a.) For instance, Claimant recalled receiving an expensive bracelet and in 2019, the same client made a donation to Claimant's son in the presence of the client's financial advisor, who did not question or express concerns. (*Id.* at 106a, 108a.) This earlier donation was logged in a ledger, to which Employer had access. (*Id.* at 106a-07a.) In addition, Director's

3

wife, who was a coworker of Claimant's, was aware of the donation. (*Id.* at 107a.) Moreover, Claimant included the donation in a year-end presentation she provided Employer. (*Id.*) As for the two checks for which she was discharged, Claimant testified she did not ask the client for the donation and the client knew what the client was doing, as the client worked for a foundation and was charitable. (*Id.* at 103a, 108a.) Claimant testified the client signed her own checks and Employer, with limited exception, did not have access to this client's checkbook. (*Id.* at 109a.)

On April 6, 2021, the Referee issued a decision and order affirming the UC Service Center's determination of eligibility. The Referee determined Employer did not consistently enforce its policy and, therefore, did not establish willful misconduct. (Referee's Decision at 2.) Employer appealed to the Board, and Claimant and Employer submitted briefs.

The Board subsequently issued its Decision and Order on October 25, 2021. The Board made the following relevant findings of fact.

2. Prior to August 23, 2016, [] [E]mployer did not have a policy regarding acceptance of gifts from its clients. [] [C]laimant often received gifts from her clients.

3. In a handbook distributed on August 23, 2016, [] [E]mployer instituted a conflict of interest/code of ethics policy[,] which provides that a company's reputation for integrity is its most valuable asset and is directly related to the conduct of its officers and other employees. Therefore, employees must never use their positions with the company, or any of its clients, for private financial gain, to advance personal financial interests, to obtain favors or benefits for themselves, members of their families[,] or any other individuals, corporations[,] or business entities, or engage in activities, investments[,] or associations that compete with the company, interfere[] with an employee's business judgment[] concerning the company's best interests, or exploit[] an employee's position with the company for personal gain.

4

4. When the handbook was distributed to [] [C]laimant, [] [E]mployer informed her that it was the same as the previous handbook.

5. Subsequently, [] [C]laimant continued to receive sometimes expensive gifts from her clients such as cashmere sweaters, jewelry, and handbags. She would show the gifts to [] [P]resident. He did not discipline her for receiving the gifts or reference the policy.

6. In August of 2020, one of [] [C]laimant's clients drafted two personal checks to [] [C]laimant totaling $2,400 as a gift to be used towards a fund set up for [] [C]laimant's son to have a kidney transplant.

7. [] [C]laimant deposited the checks into an account for her son's kidney transplant.

8. On September 15, 2020, [] [E]mployer became aware of the personal checks and discharged [] [C]laimant for accepting gifts from a client[, which] it considered to be a conflict of interest/code of ethics policy violation.

(Board's Decision, FOF ¶¶ 2-8.)

The Board acknowledged that, generally, deliberately violating an employer's rule or policy constitutes willful misconduct. (Board's Decision at 2.) The Board also determined Employer established the existence of its policy. (*Id.*) However, the Board explained that even after the policy was implemented, "*de minimis*" gifts were permitted. (*Id.*) The Board also restated that Claimant was told the policy was the same as the previous policy, and after the new policy went into effect, she continued to accept gifts, some of which were expensive, with President's knowledge and without repercussions. (*Id.*) Thus, the Board determined Employer failed to meet its burden of establishing willful misconduct because "[E]mployer did not uniformly enforce its policy when it permitted employees to accept some gifts, but terminated [] [C]laimant for accepting the checks." (*Id.* at 2-3.) The Board explained "[i]t was unreasonable for [] [E]mployer to expect employees to know

what was and what was not acceptable to accept as a gift from a client." (*Id.* at 3.) The Board further determined that Employer did not establish the money was used for Claimant's personal gain, as it was deposited into her son's transplant fund. (*Id.*) Accordingly, the Board determined Claimant was not ineligible for benefits under Section 402(e) of the Law and affirmed the Referee's decision granting benefits. (*Id.*)

Thereafter, Employer filed a timely Petition for Review with this Court.

## II. PARTIES' ARGUMENTS

Employer argues some of the Board's findings are not supported by substantial evidence and the Board erred as a matter of law in determining Claimant did not commit willful misconduct.[2] Specifically, Employer argues Findings of Fact 4 and 5 are not supported by substantial evidence. With regard to Finding of Fact 4, that Claimant was told the 2016 handbook was the same as the previous handbook, Employer maintains Claimant's attorney stated this, not Claimant, and, as such, it is not evidence. Employer also disputes there is substantial evidence to support Finding of Fact 5, that Claimant sometimes received expensive gifts from clients and was not disciplined, stating Claimant testified that she "imagines" Employer was aware of the value of the nonpecuniary gifts, which she could not specifically identify as having received after 2016. (Employer's Brief (Br.) at 24 (citing R.R. at 113a).)

Employer further argues that Employer established the existence of a rule, of which Claimant was aware as she signed the handbook, and Claimant accepted significant monetary gifts from a client in failing cognitive health in violation of that

---

[2] We have reordered and consolidated Employer's arguments for ease of discussion.

6

policy and the fiduciary relationship she had with the client. Employer also asserts that, notwithstanding the policy, Claimant violated the standard of conduct that Employer reasonably expected of its employees under these circumstances and given the nature of Employer's business. Employers cites to this Court's decision in *Kronstadt v. Unemployment Compensation Board of Review*, 489 A.2d 310 (Pa. Cmwlth. 1985), for the proposition that accepting money while in a position of trust constitutes willful misconduct.

The Board responds that while Employer may view the facts differently, that does not mean there is not substantial evidence to support the Board's contrary findings. It points to specific testimony of Claimant that supports the two challenged findings. The Board further argues that there was inconsistent enforcement of the policy as the record shows Employer had a history of allowing employees to accept gifts even after the new handbook with the policy was issued. It notes Claimant received a $5,000 donation from the same client one year earlier, listed the check in the ledger to which Employer had access, and included it in a year-end presentation given to Employer. Moreover, the Board contends President's testimony supports the conclusion there was inconsistent enforcement as he testified the *de minimis* gifts were acceptable although the policy does not provide for any exceptions.

The Board also asserts that Employer's claim that the client was in failing cognitive health is belied by the record as there was only "vague" testimony that the client was "elderly and in a decline." (Board's Br. at 18.) Likewise, the Board disputes that the evidence shows Claimant delayed reporting the donations, stating Claimant entered it into the ledger similar to the earlier donation. Finally, the Board argues Employer's reliance on *Kronstadt* is misplaced. According to the Board, the employer there clearly thought the acceptance of money was inimical to its best

7

interests, as it immediately terminated the claimant, whereas here, employees of Employer accepted gifts for years, before and after the policy was implemented. The Board posits:

> it is difficult to imagine how Employer considers the acceptance of gifts to be so inimical to its best interests when (1) Employer has allowed this practice to occur for years, (2) even Employer's President . . . accepted an $8,000 gift from a client, and (3) Employer failed to discipl[in]e employees for accepting gifts, including Claimant when she received the 2019 [d]onation.

(Board's Br. at 20.) The Board asserts donations before implementation of the policy are relevant to whether acceptance of gifts is inimical to Employer's best interests.

## III. DISCUSSION

Initially, we note that our scope of review is limited to determining "whether constitutional rights were violated," whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). On appeal, the Board's findings are conclusive "so long as the record taken as a whole contains substantial evidence to support them." *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). "Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion." *Id.* "In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." *Id.* "It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the

8

critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Stated another way, that there may be record evidence "that could support a contrary conclusion" does not mean "that the findings of fact are not supported by substantial evidence." *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 842-43 (Pa. Cmwlth. 2017) (citing *Johnson v. Unemployment Comp. Bd. of Rev.*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986)). Finally, it bears emphasis that "the Board is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence." *Ductmate Indus., Inc.*, 949 A.2d at 342.

Employer asserts two of the Board's findings, namely Findings of Fact 4 and 5, are not supported by substantial evidence. Upon review of the record, we disagree. In Finding of Fact 4, the Board found, "[w]hen the handbook was distributed to [] [C]laimant, [] [E]mployer informed her that it was the same as the previous handbook." (Board's Decision, FOF ¶ 4.) Employer is correct that Claimant's attorney stated the handbook was "boilerplate," (R.R. at 90a), and this statement is not evidence; however, Claimant herself later testified that when the handbooks containing the policy were distributed, Employer "said it was a boiler[]plate handbook. It wasn't anything different than the handbook that we had before," (*id.* at 103a). This statement constitutes substantial evidence to support the Board's finding.

Employer also challenges Finding of Fact 5, in which the Board found: "Subsequently, [] [C]laimant continued to receive sometimes expensive gifts from her clients such as cashmere sweaters, jewelry, and handbags. She would show the gifts to [] [P]resident. He did not discipline her for receiving the gifts or reference

9

the policy." (Board's Decision, FOF ¶ 5.) A review of the record reveals Claimant testified that after the policy was implemented, Claimant continued to accept expensive gifts, which she showed to President, and Claimant was not disciplined for accepting those gifts. (R.R. at 106a, 113a.) Viewing the evidence in the light most favorable to Claimant, as the prevailing party, and giving Claimant the benefit of any logical and reasonable inferences therefrom, *Henderson*, 77 A.3d at 718, this statement likewise constitutes substantial evidence to support the Board's finding.

Having concluded there was substantial evidence to support the Board's findings, we now turn to whether Claimant's actions constituted willful misconduct. Section 402(e) of the Law provides that a claimant is ineligible for benefits for any week "[i]n which [a claimant's] unemployment is due to [the claimant's] discharge or temporary suspension from work for willful misconduct connected with [the claimant's] work . . . ." 43 P.S. § 802(e). "Willful misconduct" is not defined in the Law, but our Supreme Court has held that the term means:

> a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Navickas v. Unemployment Comp. Rev. Bd.*, 787 A.2d 284, 288 (Pa. 2001) (citation omitted). An employer bears the burden of proving that a claimant engaged in willful misconduct. *McLean v. Unemployment Comp. Bd. of Rev.*, 383 A.2d 533, 535 (Pa. 1978). "The question of whether or not an employee's actions constitute wil[l]ful misconduct is a question of law, subject to our review," and "[t]he determination must be made in light of all the circumstances." *Id.* (internal citations omitted). Moreover, "our courts have consistently recognized that in willful

10

misconduct cases, the issue is not whether the employer had the right to discharge the employee for the particular conduct, but rather whether the Commonwealth is justified in reinforcing that decision by denying benefits under the Law." *Great Valley Publ'g v. Unemployment Comp. Bd. of Rev.*, 136 A.3d 532, 536 (Pa. Cmwlth. 2016).

The violation of an employer's policies or work rules may constitute willful misconduct. *Caterpillar, Inc. v. Unemployment Comp. Bd. of Rev.*, 654 A.2d 199, 201 (Pa. Cmwlth. 1995). "When an employee is discharged for violating a work rule, the employer must prove the existence of the work rule, the reasonableness of the rule, the claimant's awareness of the rule, and the fact of its violation." *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 79 (Pa. Cmwlth. 2012). The employee's violation of a rule must be knowing and deliberate, and an inadvertent or unknowing rule violation is not willful misconduct. *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947 & n.6 (Pa. Cmwlth. 2004). "Once [an] employer meets its burden, the burden shifts to the claimant to prove that the rule was unreasonable or that [the claimant] had good cause for violating the rule." *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012).

However, if there is inconsistent enforcement of a rule, an employer cannot establish there was a "deliberate violation." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 900 (Pa. Cmwlth. 2019). "[I]nconsistent enforcement occurs where an employer enforces a rule so inconsistently that it no longer appears to be a rule that employees must follow." *Id.* In such situations, we have stated that "a written work rule that is not enforced uniformly is no more than a piece of paper." *Allen v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1128, 1135 (Pa. Cmwlth. 2018). We further explained:

11

An employer cannot pursue haphazard enforcement of its work rule and expect that rule to be dispositive of a claimant's eligibility. "[I]nconsistent enforcement" of a work rule does "not establish such a standard of conduct with which [an employer] could reasonably expect its employees to comply." . . . To be sure, an employer may change its enforcement policy from one of a lax posture to one of zero tolerance, but it must warn employees of the new strict enforcement policy.

*Id.* at 1136 (quoting *City of Beaver Falls v. Unemployment Comp. Bd. of Rev.*, 441 A.2d 510, 512 (Pa. Cmwlth. 1982)) (internal citations omitted). *See also Great Valley Publ'g*, 136 A.3d at 538-39 (holding that where an employer admittedly tolerated violations of its policy governing employees' internet use, the employer failed to establish that the claimant's use of internet amounted to willful misconduct); *Fegley Mgmt. & Energy LLC v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 11 C.D. 2020, filed Oct. 14, 2020), slip op. at 10 (holding that "[b]ecause [the e]mployer did not show that it consistently enforced its own . . . policy, it was as if there was no rule at all").[3]

Here, the Board concluded Employer did not meet its burden of establishing willful misconduct because it was not consistent in its enforcement of the policy. In so concluding, the Board found Claimant received gifts, some of which were expensive, after the policy was in effect, of which President was aware since Claimant showed them to him, yet Claimant was not disciplined. (Board's Decision, FOF ¶ 5.) Nor did President refer Claimant to the policy when shown these gifts. (*Id.*) We agree with the Board that the evidence supports the conclusion that Employer did not consistently enforce its policy, leaving employees to guess what was and was not permissible.

---

[3] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

To the extent Employer argues that accepting the donations was so inimical to Employer's best interests that "discharge was a natural result," *Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 562 (Pa. Cmwlth. 2012), we disagree. The case upon which Employer relies, *Kronstadt*, is distinguishable. There, an insurance claims supervisor was discharged after accepting $266 from an attorney, who performed work for the employer, while gambling on vacation. *Kronstadt*, 489 A.2d at 310. No established rules prohibited this, but the Court determined the employer and attorney had a fiduciary relationship and the claimant served as a conduit between the two. *Id.* at 310-11. Thus, the "conduct was so inimical to [the] employer's best interests as to constitute willful misconduct." *Id.* at 311. While on its face, it would appear *Kronstadt* would require the same result, unlike in *Kronstadt*, here there is credited evidence that Employer permitted employees to accept gifts, both before and after its policy was implemented. As the Supreme Court explained in *Woodson v. Unemployment Compensation Board of Review*:

> A determination of whether an employee has engaged in willful misconduct can . . . only be made by considering what standard of conduct an employer reasonably requires. Standards expected by one employer may[,] of course[,] not be the standards of another employer. Willful misconduct cannot therefore be considered in a vacuum. **It must be considered in relation to the particular employees and to the reasonable standards expected by a particular employer.**

336 A.2d 867, 868 (Pa. 1975) (emphasis added). Here, given the past practice of Employer permitting the acceptance of gifts, Employer has not shown Claimant's conduct was so inimical to its interests to constitute willful misconduct.

13

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FBO Services, Inc.,           :
           Petitioner    :
                      :
        v.         :   No. 1306 C.D. 2021
                      :
Unemployment Compensation   :
Board of Review,         :
          Respondent  :

## O R D E R

NOW, April 18, 2023, the Order of the Unemployment Compensation Board of Review, dated October 25, 2021, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge