Miranda Coplin,                   :
          Petitioner        :
                              :
        v.                   :    No. 781 C.D. 2024
                              :
Unemployment Compensation   :    Submitted: May 6, 2025
Board of Review,             :
          Respondent     :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH             FILED: June 20, 2025

Miranda Coplin (Claimant), *pro se,* petitions for review of the March 19, 2024 order of the Unemployment Compensation (UC) Board of Review (Board) affirming and adopting, as modified, the UC Referee's (Referee) decision issued on December 27, 2023, that determined Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  Upon review, we affirm.

## I.      **Background and Procedural History**

Claimant was employed as a full-time warehouse associate by Amazon.com Services, LLC (Employer) from October 24, 2022, until August 29, 2023.

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to discharge for willful misconduct).

(Certified Record (C.R.) at 10.) Employer has a policy that prohibits employees from sitting on or in a merchandise cage because the cages can collapse or roll and cause injuries. (Finding of Fact (F.F.) Nos. 3, 5.) Employer also has a policy prohibiting the use of cell phones by employees on the warehouse floor. (F.F. No. 7.) Claimant was aware of Employer's policies. (F.F. No. 3.) In April of 2023, Employer terminated Claimant's employment for violation of its cell phone policy, but later brought her back after the situation was reviewed. (Referee's F.F. No. 8, as modified by the Board's order.) On August 17, 2023, Claimant sat in a merchandise cage to use her cell phone. (F.F. No. 10.) On August 29, 2023, Employer discharged Claimant for violating its safety rules regarding the cages and for being on her cell phone on the production floor. (Referee's F.F. No. 13, as modified by the Board's order.)

On September 5, 2023, Claimant applied for UC benefits. (C.R. at Item 1.) On October 20, 2023, the Department of Labor and Industry (Department) found Claimant ineligible under Section 402(e) of the Law because she was discharged for conduct that constituted willful misconduct. (C.R. at Item 4.) On October 23, 2023, Claimant appealed the Department's denial of UC benefits to a Referee, stating:

> On the day in question, I was in the middle of a medical crisis. I was being left to unload a truck alone for an unknown amount of time. Lifting boxes that [were] over my weight limit. There was supposed to be a chair in my work area for me to sit in the case of emergency. My chair was removed. My medical notes from my doctor were ignored by my supervisors. Every time I would address this I was told that managers don't get to sit so that is why my chair was removed. This day I stayed in place doing my job for too long and the nerve in my back pinched which caused my leg to give out. I sat down safely instead of falling. Evan watched me struggle with the truck for an unknown amount of time before choosing to write me up.

(C.R. at Item 5.)

2

A hearing before the Referee was held on December 13, 2023, at which Claimant and a witness for Employer, H.R. Representative Jamie Hamrick, represented by Counsel, appeared and testified. (C.R. at Item 9.) At the hearing, Claimant introduced photos which she alleged showed other employees sitting in cages. When the Referee asked Claimant if she had submitted the photos to Employer prior to her termination, she answered no, because she found the photos on social media after she was terminated. (Notes of Testimony (N.T.) at 7; C.R. at Item 9.) The Referee then entered the photos into the record over Employer's objection. *Id.* The Referee asked Ms. Hamrick if Claimant had given her any reason for sitting in a cage. Ms. Hamrick replied that Claimant told her she had a medical accommodation to sit in a cage. When questioned about this, Ms. Hamrick denied that Claimant had such an accommodation. (N.T. at 10, 11, 12, 14.) Claimant also testified at the hearing that she was given permission from Ms. Hamrick to use her cell phone on the production floor to answer phone calls from her husband in the prison system. Ms. Hamrick denied this. (N.T. at 12, 13, 16.) Claimant further testified that she had an accommodation to use a cell phone on the production floor and that she was on the phone the day she was fired because she was trying to contact her supervisor about her medical emergency. (N.T. at 18, 19.)

On December 27, 2023, the Referee issued a decision and order affirming the Department's denial of benefits. (C.R. at Item No. 10; Referee's decision.) In his analysis, the Referee noted that Employer has a policy, of which the Claimant was aware, which prohibits sitting in a merchandise cage because these cages can collapse or roll and cause injuries, and that immediate termination could result from a violation of this policy. (F.F. Nos. 3, 5, 6.) The Referee also noted that employees are permitted to have their cell phones on their person but not to use them on the warehouse floor and that in April of 2023, Claimant was discharged for this offense and subsequently brought back to work after the situation was reviewed. (F.F. Nos. 7,

3

8.) Additionally, the Referee found that on August 16, 2023, Claimant was discovered sitting in a cage and was verbally warned not to do that. (F.F. No. 9.) The Referee further found that on the next day, August 17, 2023, Claimant was again discovered sitting in a cage using her cell phone. (F.F. No. 10.) The Referee also found that employer conducted an investigation that included a review of surveillance video and that Employer did not condone Claimant's actions during the investigation. (F.F. Nos. 11, 12.) Finally, the Referee found that on August 29, 2023, Claimant was discharged for violating Employer's safety rules regarding the cages and for being on her cell phone on the production floor. (F.F. No. 13, as modified.)

The Referee concluded that Employer had established Claimant's willful misconduct with credible evidence that Claimant had violated Employer's safety rules and policies. (C.R. at Item 10.) He also concluded that Employer's safety policies were reasonable and that Claimant was aware of the policies because she had been terminated before for the same violation and was verbally warned about the same behavior the day before the offense that led to her being fired. *Id.* The Referee found Claimant's assertion that a chair used to accommodate her medical needs was removed by a supervisor was not credible because Claimant never reported this to the Human Resources Department. *Id.* Finally, he found Claimant's explanation for her behavior to be "less than credible." He stated:

> On August 17, 2023, [Claimant] was found sitting in a cage with her cell phone out. [Claimant] alleges she was suffering a medical crisis at the time and was summoning her supervisor on the phone. Although [Claimant] alleges that a chair used to accommodate her medical needs was removed by a supervisor, [Claimant] never reported this to Human Resources.
>
> Secondly, [Claimant] was aware that [the] offense was terminable and yet she repeated it three times including on back-to-back days.

4

> Furthermore, although [Claimant] tried to substantiate her case with many technological snippets, she failed to show any evidence of a call placed to a supervisor at the time she was discovered in the cage on August 17, 2023[,] during the alleged medical crisis.

*Id.* In sum, the Referee concluded that Claimant was ineligible for benefits under Section 402(e) because her actions rose to the level of willful misconduct. *Id.* On January 2, 2024, Claimant appealed to the Board, arguing that, *inter alia,* she was not given a fair hearing before the Referee. (C.R. at Item 11.) She asserted that the Referee interfered when she was asking questions, that she "wasn't allowed to accurately defend [herself]," and that she "was not given all the proper documentation before the hearing so [she] could not defend [herself] accordingly." *Id.* She also restated her claim that she "was wrongfully fired during a medical emergency while calling for help . . . ." *Id.*

On March 19, 2024, the Board affirmed the Referee's decision. (C.R. at Item 13.) The Board resolved all conflicts in evidence and testimony in Employer's favor. *Id.* The Board did not credit Claimant's testimony that others were permitted to use cell phones or sit in cages and were not punished by Employer, nor did it credit Claimant's testimony that she was on her phone due to a medical crisis and was attempting to contact her supervisor. *Id.* Finally, the Board did not credit Claimant's testimony that she had received a medical accommodation to sit in a cage, because the Board found that such an accommodation would never be granted due to the safety issues presented. *Id.* Thus, the Board adopted and incorporated the Referee's findings and conclusions into its decision with two modifications.[2] *Id.*

---

[2] The Board modified the Referee's finding of fact No. 8 to clarify that the phrase "this offense" refers to the use of Claimant's cell phone on the production floor and modified finding of

**(Footnote continued on next page…)**

As noted above, Claimant made additional allegations before the Board that were not raised before the Referee regarding the fairness of the Referee's hearing. She alleged that the record contains inaccurate information and that the Referee interfered with her questioning of Employer's witness. *Id.* She further asserted that she was not allowed to defend herself, and that the hearing was unfair due to the bias of the Referee. *Id.* With respect to these claims, the Board found

> [C]laimant had a full and fair opportunity to testify, to call witnesses, and to cross-examine the ones that were present. The record shows that [Claimant] consistently interrupted [Employer] and the Referee; she also frequently responded to the testimony by accusing Employer of lying. Nothing in the record supports her assertions.

*Id.* Claimant now appeals to this Court.

## II.   Issues

On appeal, Claimant first argues that she had good cause for violating Employer's policies against sitting in merchandise cages and talking on her cell phone because she was experiencing a medical emergency and was attempting to contact her supervisor. (Appellant's Br. at 2.)[3] Secondly, she alleges that [Employer] "picks and chooses" to whom it applies its policies. *Id.* at 3. Finally, she contends that she was treated unfairly by the Referee during her hearing. *Id.* at 2. In response, Employer argues that the Referee and the Board did not err when they did not credit Claimant's testimony regarding her alleged medical crisis, nor did it err when it found that Claimant failed to prove that Employer did not consistently enforce its policies and also failed to prove that she did not receive a fair hearing before the Referee. (Employer's Br. at 8-11.)

---

fact No. 13 to reflect that Claimant was discharged for violating Employer's rules about the cages and for being on her cell phone on the production floor. (C.R. at Item 13.)

[3] We note that Appellant's Br. lacks page numbers.

## III. __Discussion__[4]

Section 402(e) of the Law provides that an employee shall be ineligible for unemployment benefits for any week in which her unemployment is due to willful misconduct connected to her work. 43 P.S. § 802(e). The term "willful misconduct" is not defined by statute. The courts have defined willful misconduct as "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014).

"Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Gordon Terminal Service Company v. Unemployment Compensation Board of Review*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019) (citation omitted). In UC cases, the employer bears the burden of demonstrating that Claimant's unemployment is due to willful misconduct. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). In order to show that a claimant's violation of an employer's policy constitutes willful misconduct, the employer must show (1) the existence of the policy, (2) the reasonableness of the policy, and (3) that the claimant was aware of the policy. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). In addition, the employer must prove the claimant violated the policy or rule. *Walsh*, 943 A.2d at 369.

---

[4] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Devine v. Unemployment Compensation Board of Review*, 101 A.3d 1235, 1237 n.2 (Pa. Cmwlth. 2014).

7

Once the employer has met its initial burden, the burden shifts to the claimant to prove that his or her actions did not constitute willful misconduct or that he or she had good cause for the behavior. *Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 438-39 (Pa. Cmwlth. 2000). A determination of whether an employee's actions amount to willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's policy or directives." *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001) (quoting *Rebel v. Unemployment Compensation Board of Review*, 723 A.2d 156, 158 (Pa. 1998)). Finally, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

In the present case, Claimant has not challenged the existence of Employer's policies, the reasonableness of those policies or the fact that she was aware of those policies. Instead, Claimant argues she had good cause for her behavior. She asserts that on the day she was terminated for sitting in a cage, "my leg gave out and I had no choice to sit down or fall down. I chose to sit down safely. I pulled my phone out to call the [Human Resources Department] to communicate that I needed help to the [break] room." (Appellant's Br. at 2.) She further states that a supervisor asked if she had an accommodation and she told him that she did. *Id.* The Board counters this argument by stating that it specifically found Claimant's testimony not credible when she stated that she was suffering a medical crisis requiring her to sit down or that she needed to use her cell phone to contact human resources and that the Board is the final arbiter of credibility and can accept or reject any testimony in whole or in part. (Respondent's Br. at 8.)

We agree with the Board that it is the final arbiter of credibility. In an unemployment compensation case, the Board is the ultimate fact-finder and is

8

empowered to make credibility determinations. "In making such determinations, the Board is free to reject the testimony of any witness, even uncontradicted testimony." *Russo v. Unemployment Compensation Board of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010) (citations omitted.) *See also Deal v. Unemployment Compensation Board of Review*, 878 A.2d 131, 133 n.2 (Pa. Cmwlth. 2005). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Waverly Heights, Ltd. v. Unemployment Compensation Board of Review*, 173 A.3d 1224, 1227 (Pa. Cmwlth. 2017) (quoting *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007)). "We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings." *Id.* at 1228. In this case, the Board specifically found that Claimant's testimony as to her reason for sitting in a cage and for using her telephone on the production floor was not credible. (C.R. at Item 13.) Therefore, Claimant has failed to establish that she had good cause for knowingly violating Employer's safety policies.

Claimant's second argument is that Employer treated her differently than other employees when it terminated her for violating its safety policies. (Appellant's Br. at 3.) With respect to this claim, Claimant asserts that she has provided photos that prove that "management picks and chooses" to whom they apply their policies. *Id.* As proof of this allegation, Claimant submitted photographs to the Referee which she claimed showed other employees sitting in cages or using their cell phones at work. "[I]nconsistent enforcement occurs where an employer enforces a rule so inconsistently that it no longer appears to be a rule that employees must follow." *Gordon Terminal Service*, 211 A.3d at 900. The only evidence presented by Claimant of other employees being allowed to sit in a cage or to use their cell phones on the shop floor without repercussion were photos Claimant admitted she found on social media sites. Claimant, however, presented no evidence suggesting that Employer was aware of any

of the alleged infractions of its policies or rules at the time it terminated Claimant's employment. (N.T. at 7.) More importantly, the Board specifically stated that it "does not find credible that others were permitted to use cell phones or sit in cages and were not punished by [Employer.]" (C.R. at Item 13.) As previously noted, "[t]he Board is . . . empowered to resolve conflicts in evidence." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985)). We will not re-evaluate the Board's credibility determinations on appeal, and we conclude that Claimant failed to adduce any evidence found credible by the Board which suggests that Employer's safety rules were inconsistently enforced.

Claimant's final argument is that her hearing before the Referee was unfair because while Employer's lawyer was allowed to speak uninterrupted, Claimant was not allowed to speak. (Appellant's Br. at 2.) We construe Claimant's argument about the unfairness of hearing to be one implicating due process concerns. "The essential elements of due process are notice and an opportunity to be heard in a full and fair hearing before an impartial decision maker." *Leone v. Unemployment Compensation Board of Review*, 885 A.2d 76, 80 (Pa. Cmwlth. 2005). With regard to the conduct of UC hearings, we note that UC Referees are "authorized to regulate the course of hearings and to take other action necessary or appropriate to the discharge of the duties vested in them. *Powell v. Unemployment Compensation Board of Review*, 157 A.3d 884, 893 n.11 (Pa. 2017) (quoting 1 Pa. Code § 35.187(1) & (10)).

Review of the hearing transcript in this case reveals that at the beginning of the hearing, the Referee asked all of the parties if they understood their rights, to which Claimant answered that she did. (N.T. at p. 3.) It also reveals that in the early stages of the hearing, Claimant repeatedly interrupted the Referee and spoke over him, even after she was warned not to do so. (N.T. at 6-7.) Later, during Employer's testimony, Claimant accused Employer of lying, which resulted in the Referee

admonishing Claimant, stating "You are interrupting. You will have your time. I also do want to caution you, do not tell me that someone is lying. I will make that determination." *Id.* at 9.

While we appreciate that the UC appeals process can be challenging, especially for *pro se* litigants, our review of the record and hearing transcript reveals that as the hearing progressed, Claimant's interruptions of both the Referee and Employer's witness became less frequent and she ultimately was afforded the opportunity to present her testimony, to submit evidence, and to ask questions of Employer's witnesses. While the Referee did at times admonish Claimant to avoid speaking out of turn, these efforts to regulate the course of the UC hearing were within the Referee's sound discretion. *Powell*, 157 A.3d at 893 n.11. Thus, Claimant failed to establish that she was prejudiced or that the Referee's conduct prevented her from receiving a full and fair hearing or was otherwise denied due process. *Leone*, 885 A.2d at 80.

## IV.   Conclusion

In light of the foregoing, we conclude that Employer met its burden of demonstrating that Claimant was ineligible for benefits under Section 402(e) of the Law due to her termination from employment for willful misconduct. Because we find that the Board did not err or abuse its discretion in affirming the Referee's decision, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Miranda Coplin,               :
         Petitioner         :
                                    :
         v.                     :     No. 781 C.D. 2024
                                    :
Unemployment Compensation    :
Board of Review,               :
         Respondent      :

## *ORDER*

AND NOW, this 20th day of June, 2025, the March 19, 2024 order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge